512 P.2d 65

**Carmen LORENZO, Plaintiff-Appellant,**

v.

**Louis LORENZO, Defendant-Appellee.**

**No. 9535.**

Supreme Court of New Mexico.

July 13, 1973.

Kastler & Erwin, John P. Davidson, Raton, for plaintiff-appellant.

Gallagher & Ruud, Marchiondo & Berry, Albuquerque, for defendant-appellee.

## OPINION

MONTOYA, Justice.

The parties hereto were married in 1946, and in June 1968, while residing in the State of Oklahoma plaintiff-appellant (appellant) and defendant-appellee (appellee) were separated. Subsequently, appellant assumed residency in New Mexico, while appellee remained in Oklahoma.

Thereafter, in February 1969, appellee procured a divorce from appellant in Ciudad Juarez, Chihuahua, Mexico. The Mexican decree provided various support and property settlement provisions.

In November 1970, appellant brought suit in the courts of New Mexico against appellee, seeking a divorce, child support, division of community property, support and alimony, and attorney's fees.

Appellee answered, asserting that the complaint failed to state a claim and submitted the defense that appellant had previously acquiesced in a divorce procured in Mexico and was bound thereby.

At the close of the evidence presented by appellant, appellee moved to dismiss the complaint, which motion was granted by the court. Apparently this dismissal was entered pursuant to § 21–1–1(41)(b), N. M.S.A., 1953 Comp., though there is no direct citation to that effect in the record.

In ruling on a motion to dismiss made at the close of appellant's case, the trial court is not required to view appel-

lant's evidence in its most favorable light, but rather to weigh all evidence and give it the weight it deserves. Komadina v. Edmondson, 81 N.M. 467, 468 P.2d 632 (1970). However, evidence which is unimpeached and uncontradicted may not be disregarded, and findings diametrically opposed thereto lack support. Frederick v. Younger Van Lines, 74 N.M. 320, 393 P.2d 438 (1964).

Appellant argues that the trial court did in fact disregard evidence which is unimpeached and uncontradicted and that the judgment is not supported by substantial evidence.

Those findings challenged on appeal are summarized as follows:

That the husband continued to reside in McAlester, Oklahoma from the date of separation until December 17, 1968, when he acquired a residence in Ciudad Juarez and, on December 27, 1968, filed a petition for divorce in Mexico against the plaintiff, which was served upon her on January 9, 1969.

That a decree of divorce was entered in Mexico setting forth provisions of support payments for the children, awarding the New Mexico real estate to the wife, and stating that the particulars of the divorce decree have been complied with.

That the wife has earned in excess of $200 per month since the separation, sold the real estate, and has retained the funds for her own use, has no physical impairment and is physically able to maintain gainful employment, and the court then listed certain community property and determined what had happened to it.

That prior to the filing of the complaint in 1970 in this cause, the husband remarried and the wife had knowledge of the remarriage.

Appellant also challenges the conclusions of the trial court that the Mexican divorce decree is entitled to "full faith and credit" in the State of New Mexico; that appellee at the time of the Mexican decree was a bona fide resident of Mexico; that appellant, by acquiescing in the Mexican decree, is estopped or has allowed "laches" to bar her from asserting the invalidity of the Mexican decree; and that she is not entitled to alimony, has received 100% of the community property, and should pay her own attorney's fees.

We are faced with two questions: (1) Whether recognition should be given to the decree of divorce granted by a Mexican court, when attacked on the ground that one or both parties were not domiciled in the country granting the divorce; and (2) whether the decree should be recognized under the doctrines of estoppel, laches, unclean hands, or like equitable principles.

In the Annot. 13 A.L.R.3d 1419 entitled "Domestic Recognition of Divorce Decree Obtained in Foreign Country and Attacked for Lack of Domicil or Jurisdiction of Parties," the general rule is stated at 1425:

"Regardless of its validity in the nation awarding it, the courts of this country will not generally recognize a judgment of divorce rendered by the courts of a foreign nation as valid to terminate the existence of the marriage unless, by the standards of the jurisdiction in which recognition is sought, at least one of the spouses was a good-faith domiciliary in the foreign nation at the time the decree was rendered."

See cases cited therein.

This is the rule adhered to in Golden v. Golden, 41 N.M. 356, 68 P.2d 928 (1937), and recognized in Ferret v. Ferret, 55 N. M. 565, 237 P.2d 594 (1951).

In Golden, supra, a divorce was obtained in Mexico by both spouses on a one-day trip to that country. The husband subsequently remarried. Sometime later the wife sued for a divorce in New Mexico, contending that the Mexican decree was invalid. The court therein held, rejecting the husband's arguments that the Mexican divorce was valid, or that the wife was estopped by her conduct from attacking the validity of that divorce, that (1) neither

party had established a "residence" in Mexico under any known definition of residence; (2) that the first essential for the validity of a decree of divorce is that it should be pronounced by a competent court of jurisdiction with at least one of the parties being a bona fide subject of that jurisdiction; (3) that, therefore the Mexican decree was wholly invalid, and to give it recognition and effect would be contrary to New Mexico's public policy; and (4) that although the husband had remarried, the wife had received no material benefit under the purported Mexican divorce and, under equitable principles, she should not be estopped to challenge its validity.

■ Though Golden, supra, concerned a bilateral divorce decree, an ex parte divorce, based on the petitioning spouse's physical presence in the divorcing nation and notice to, or constructive service upon an absent defendant spouse are within the rule denying recognition to foreign divorce decrees procured without a showing of domicile by at least one spouse. See Wells v. Wells, 230 Ala. 430, 161 So. 794 (1935); Estate of Nolan, 56 Ariz. 361, 108 P.2d 388 (1940); Bethune v. Bethune, 192 Ark. 811, 94 S.W.2d 1043, 105 A.L.R. 814 (1936), and Sohnlein v. Winchell, 230 Cal.App.2d 508, 41 Cal.Rptr. 145 (1964).

In the instant case, the court found that appellee acquired a residence in Ciudad Juarez, Chihuahua, Mexico, on December 17, 1968, and resided there until December 27, 1968, when he filed a petition for divorce against the appellant, a copy of which was served upon the appellant on January 9, 1969, in Raton, New Mexico. A decree of divorce was entered in the Mexican court on February 20, 1969, the provisions of which have apparently been complied with by appellee.

However, the record in this case with respect to the residence of the appellee, as reflected by his own testimony, reveals that he lived in McAlester, Oklahoma; was employed by the federal government as a coal mine inspector; that he flew from Oklahoma to Mexico, rented lodging for the period of two weeks, which was also a vacation, and listed his attorney's address as his own. The following excerpts from testimony by appellee are significant under questioning by appellant's counsel:

"Q. You didn't actually intend to change your American residence to that of a Mexican residence, did you?

"A. I had thoughts along that line.

"Q. But you didn't do so, did you?

"A. No.

"Q. You didn't quit your job up here?

"A. No, sir.

" * * *.

"Q. You traveled there and back in one trip or more than one trip?

"A. In one trip.

"Q. Did you take a vacation when you went down there?

"A. Yes, sir.

"Q. For two weeks?

"A. Yes.

" * * *.

"Q. In fact Mr. Lorenzo, the purpose of your going to Mexico was just to get a divorce as quickly as possible, wasn't it.

"A. It was part of the reason, yes, sir.

"Q. You didn't intend to give up your American or Oklahoma residency in order to do that, did you?

"A. I had thoughts along that line, sir.

"Q. But you didn't do it, did you?

"A. No, sir."

As heretofore pointed out, the trial court found that appellee had acquired a bona fide legal residence in Mexico and concluded, as a matter of law, that the Mexican divorce decree was final and binding upon the parties and entitled to full faith and credit in New Mexico. In resolving the attack being made herein upon the validity of the Mexican decree, we need only to look at our decision in Golden v. Golden,

supra, where we said (41 N.M. 364, 68 P. 2d 932):

"Jurisdiction over the subject-matter of divorce rests upon domicile. This is not only the law as established by the great weight of authority in the United States (note, 39 A.L.R. 677), but is the law in the state of Chihuahua, Mex., as clearly appears from article 22, supra.

"We are not here concerned with the 'full faith and credit' clause of the Constitution of the United States (art. 4, § 1), for that provision is not applicable to judgments of foreign countries nor is our attention called to any treaty existing between the United States and Mexico dealing with questions of divorce. A decree of divorce rendered in one state may be impeached and denied recognition in another upon the ground that neither of the parties had such domicile or residence at the divorce forum; and this, notwithstanding the recitals in the decree or record from the other state or country of the jurisdictional fact of domicile or residence. Cases in note, 39 A.L.R. 677. * * *"

We also quoted approvingly from an early Wisconsin case as follows (41 N.M. 366–67; 68 P.2d 934):

" 'It is conceded by both parties that the only question for determination is whether that decree of divorce is valid, and operated as a legal separation of Adolph and Elise at the time it was rendered.

" 'In this country it is prescribed by constitutional compact that full faith and credit must be given in each state to the public acts, records, and judicial proceedings of every other state; and yet it is well settled that the record of a judgment rendered in another state may be contradicted as to the facts necessary to give the court jurisdiction, and, if want of jurisdiction appear upon the face of the record, or is shown either as to the subject-matter or the person, or, in proceedings in rem, as to the thing, the record will be regarded as a nullity.

[Citations omitted.] The rule is certainly as strong, if not stronger, when applied to a judgment rendered in a court of a foreign country, towards which no such duty is enjoined, and especially where the jurisprudence of such foreign country is in no sense based upon the common law. * * * In speaking of the residence in this state essential to give the court jurisdiction, Ryan, C. J., aptly said: "No mere pretense of residence, no passing visit, no temporary presence, no assumption of residence here pro hac vice only, nothing short of actual abode here, with intention of permanent residence, will fill the letter or the spirit of the statute." [Citations omitted.] "The legislature was legislating for the citizens of this state, not for others." [Citation omitted.] These propositions are still more significant when applied to any statute, law, or custom of any foreign country like Sweden.' [Citation omitted.]"

We have, as recently as 1967, followed the rule announced in Golden, supra, regarding the question of jurisdiction to grant a decree. In Heckathorn v. Heckathorn, 77 N.M. 369, 423 P.2d 410 (1967), we quoted from Golden as follows (77 N. M. 373, 423 P.2d 412):

"Golden v. Golden, supra, refers to 'the solicitude of the state of New Mexico for the marriage status.' The opinion says:

" ' * * *. The state of New Mexico, the children, and the parties to the marriage are all equally concerned in the marriage status. The parties cannot throw off their marital ties as they would a worn out pair of shoes. Proper machinery of the court is set up to sever the marital bonds when they become beyond endurance, and even then only on certain statutory grounds. * * *

" 'That the state is a party interested in the legality of the dissolution of the marriage status of its citizens is well supported by competent authority.' "

We recognize that in this review of the record, to determine if the findings made by the trial court are supported by substantial evidence, we must view the evidence in its most favorable light to support the court's findings. However, we are also mindful of the test that is applicable when weighing uncontradicted testimony which is set forth at length in Medler v. Henry, 44 N.M. 275, 101 P.2d 398 (1940). Again, in Frederick v. Younger Van Lines, supra, we stated as follows (74 N.M. 325, 393 P. 2d 441):

"* * *. We think it clear, however, that evidence which is unimpeached and uncontradicted, either by direct testimony, contradictory testimony, suspicious circumstances, or adverse inferences may not be unceremoniously cast aside and disregarded, and findings diametrically opposed thereto lack support. [Citations omitted.]"

As we previously stated in Golden, supra, jurisdiction over the subject matter of divorce rests upon domicile. In the past this court has sometimes used the words "residence" and "domicile" interchangeably for the purpose of divorce jurisdiction, but the test has always been domicile and not residence. In Allen v. Allen, 52 N.M. 174, 178, 194 P.2d 270, 273 (1948), we made the real distinction between the two terms for purposes of divorce jurisdiction as follows:

"* * *. 'Actual resident in good faith' as used in our statute is very much the same language as used in the statutes of other states concerning divorces, and we are therefore not without a construction of the expression by the highest courts of such states. In Hamill v. Talbott, 81 Mo.App. 210, 215, the court said: 'The statutory terms "resident or residence" as used in divorce statutes, contemplate, as we think, an actual residence with substantially the same attributes as are intended when the term "domicile" is used. They do not mean the place where the defendant in fact resides for the time being. They mean a residence of a permanent and fixed character, a domicile.'"

Therefore, using the foregoing rule in testing the evidence supplied by appellee himself, which was the only testimony submitted in support of the Mexican court's jurisdiction, we must hold that the findings of the trial court as to residence, much less domicile, have no support in the evidence.

In view of the foregoing, particularly appellee's own uncontradicted testimony, as well as the legal conclusion arrived at by the trial court that the Mexican decree was entitled to full faith and credit, we hold that the trial court was in error and that the Mexican decree in this case is void for lack of jurisdiction. We are not prepared, as appellee would have us do, to depart from the rule announced in Golden, supra, and the public policy as to the requirements for the dissolution of marriages as announced therein.

Appellee also urges that appellant has no right to assert the claim she advanced below to invalidate the Mexican divorce decree, contending that estoppel, laches, unclean hands, or inequitable conduct, is a sufficient foundation to validate the judgment below. It is asserted that since she received a deed to the property decreed to her by the Mexican divorce court and later sold it, this does not permit the perfection of her claim. It is to be noted that in the instant case, although appellant was served with a copy of the Mexican divorce complaint, she did not appear at any stage of the proceedings held there. Appellant voluntarily deeded the New Mexico property to her, even though the deed was prepared by appellant's attorney. In the letter forwarding the deed to appellee for signature, her attorney questioned the validity of the Mexican decree.

We believe that Golden v. Golden, supra, and Heckathorn v. Heckathorn, supra, answer all of the contentions advanced by appellee in trying to sustain the lower court's judgment. Heckathorn, supra, in citing Golden, supra, with approval, held that estoppel does not validate a void de-

cree and that the doctrine was not applicable because the divorce decree is void. We also said in Heckathorn, supra, that a delay in asserting the invalidity of the decree from March 1963, until November 1965, was not a basis for applying laches, reasoning that there is no time limitation on asserting that a judgment is void.

Accordingly, we reverse the judgment of the trial court and remand the case for such proceedings as are consistent with the views expressed herein, to grant the appellee a divorce, determine the community rights of the parties, custody and child support, and including an award of attorney's fees to the appellant for legal services rendered in all of the proceedings, including this appeal.

It is so ordered.

OMAN and STEPHENSON, JJ., concur.