John M. HOPPE, Appellant,

v.

MIDWEST CONVEYOR COMPANY, INC., Appellee.

No. 73-1105.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1973.

Decided Oct. 16, 1973.

**1198**

Rex Carr, East St. Louis, Ill., for appellant.

James J. Amelung, St. Louis, Mo., for appellee.

Before LAY, ROSS and STEPHENSON, Circuit Judges.

LAY, Circuit Judge.

This is a product liability case. John Hoppe brought this action against Midwest Conveyor Co., Inc., for injuries he received on the assembly line of Fisher Body Division, a General Motors automobile plant located in St. Louis, Missouri. The defendant, Midwest Conveyor Co., was the manufacturer of a conveyor-hoist used in the plant. At the close of the plaintiff's evidence the trial court directed a verdict for the defendant ruling there was insufficient evidence that the machine was defective or dangerous when put to a use reasonably anticipated. Plaintiff appeals. We reverse and remand for a new trial.[1]

The facts may be briefly stated. The conveyor-hoist in question is used to transfer auto underbodies from one assembly line to another. This is accomplished by elongated arms with claws on their ends which are used to clamp onto the underbodies. The evidence shows that the machine has three separate maneuvers, each controlled by different valves. The maneuvers are (1) the up and down operations of the arms, (2) a rotating motion and (3) the operation of the claws. The power for all of the movements is provided by compressed air which flows through the valves. The up and down operation is controlled by a valve known as a Parker-Hannifin solenoid air valve. Each valve is designed so that it can be operated electrically or by a manual control.

The injury took place on August 27, 1970. The conveyor-hoist had been installed on the Fisher Body assembly line approximately two weeks before. On the day in question an electrical wire broke which caused the arms to stall in a down position blocking the assembly line and halting the movement. A maintenance foreman requested Hoppe, a pipefitter, to open the manual control valve, also known as a solenoid valve, on the conveyor-hoist machine, in order that the arms could be raised and the assembly line cleared. The manual control valve was located directly above the

---

1. We again encourage trial courts to submit even doubtful questions to the jury. In this way the whole record can be made and the verdict rendered, thereby obviating the need for another trial if a reversal of a judgment notwithstanding the verdict ensues. See Passwaters v. General Motors Corp., 454 F. 2d 1270, 1272–1273 (8th Cir. 1972).

arms, some 10 to 12 feet from the floor. To gain access to the valve Hoppe had to crawl over a girder which extended above the machine. Hoppe had no prior experience with the machine and was not familiar with the machine's movements. Once Hoppe was above the valve he straddled the girder, leaned over the machine, inserted a screwdriver in a slot marked "manual override" and turned the valve. When the valve was turned the air cylinder rod retracted and the plaintiff's foot was crushed in the moving parts of the machine.

According to the plaintiff's evidence the "conduit layout of the hoist," prepared by the defendant, as submitted to and approved by General Motors, shows the location of the solenoid valve in question to be in an accessible position away from the moving parts of the machine. (After the accident the valves were moved to the approximate position shown on the original plan.) However, when the unit arrived at the plant the valve had been placed at the top of the machine. The defendant asserts that Fisher Body was in charge of the installation of the assembled machine and that the electrical schematic diagram shows that some of the parts such as the solenoid valve were to be "field-located" by Fisher Body. Plaintiff's expert witness, Dr. Gerald Dreifke, testified that the electrical schematic diagram is not designed to show the location of the valves but is to be used by electricians to make the proper connections between the new piece of machinery and the existing electrical wiring within the factory. Dr. Dreifke testified that conduit drawings are often used by the installers in the field to establish the location of parts.

Dr. Dreifke, called by the plaintiff, was an experienced design engineer and opined that the location of the solenoid valve when used as a manual control was unsafe because it was located near moving parts of the machine. On cross-ex-

amination he agreed that if the air power had been shut off before Hoppe turned the valve the accident would not have occurred. It was this fact which apparently led the trial court to conclude that the machine was not being used in a manner which could have been reasonably anticipated. The only other evidence concerning the use of the air power was by the Fisher Body maintenance foreman, Earl Rice. He testified that normally the air was not turned off while operating Parker-Hannifin valves since the valves would not operate without pressure on them. There is no evidence that defendant issued any warning or instruction with the machine that the manual override was not to be operated unless the air pressure was turned off.

Plaintiff brought suit on two distinct counts of strict liability and breach of warranty. Missouri recognizes both the doctrine of strict liability, Keener v. Dayton Electric Mfg. Co., 445 S.W.2d 362 (Mo.1969) and breach of warranty, Morrow v. Caloric Appliance Corp., 372 S.W.2d 41 (Mo.1963) (en banc).[1a]

The principle is well established that manufacturers have a duty to use reasonable care in the design of a chattel. Cf. Passwaters v. General Motors Corp., 454 F.2d 1270, 1274 (8th Cir. 1972). Recognition of the doctrine of strict liability now eliminates proof as to violation of the standard of reasonable care. *Passwaters,* supra at 1277.

Missouri has recognized liability for faulty design. In Higgins v. Paul Hardeman, Inc., 457 S.W.2d 943 (Mo. App.1970), the plaintiff was killed as the result of a hydraulic lift system on a dump truck manufactured by the defendant. While the plaintiff-decedent was oiling some bearings underneath the bed of the truck he accidently hit a control rod causing the bed of the truck to drop on him. Plaintiff's expert testified that the lift system was improperly de-

[1a.] Although plaintiff has alleged two separate counts, the claim of implied warranty and the count of strict liability are treated alike, at least, in Missouri. See Keener v. Dayton Electric Mfg. Co., 445 S.W.2d 362, 364 (Mo.1969).

signed since an accidental hitting of the control rod could operate the valves of the lift system, causing the dump body to drop. Significantly, there was no proof of the existence of a defective condition "since the hoist did not disintegrate, break down, crack or fail." Nevertheless, the Missouri court found a "dangerous condition" to exist because of the design's failure to include a safety factor. See also Pike v. Frank G. Hough Co., 2 Cal.3d 465, 85 Cal.Rptr. 629, 467 P.2d 229 (1970) (en banc) (failure of earth-moving machine to be equipped with rear view mirrors with no audible or visible backup warning signal). There the California Supreme Court observed:

"[T]here is no rational distinction between design and manufacture in this context, since a product may be equally defective and dangerous if its design subjects protected persons to unreasonable risk as if its manufacture does so." *Pike,* supra at 636 of 85 Cal.Rptr., at 236 of 467 P.2d.

See also Wirth v. Clark Equipment Co., 457 F.2d 1262 (9th Cir. 1972) (forward view of driver in van carrier severely restricted because of the way the van was constructed); Sutkowski v. Universal Marion Corp., 5 Ill.App.3d 313, 281 N.E.2d 749 (1972) (design of strip mining machine allowed debris from the adjacent spoil bank to roll beneath the machine).

■ On review of the overall record we conclude there exists sufficient evidence from which reasonable men might find that the hoist as designed by the defendant created a dangerous condition.

■ However, the basic reasoning of the trial court was that the plaintiff should be barred from recovery since the hoist was being operated in an unintended manner not foreseeable by the manufacturer. One of the essential elements of proof in a strict liability case is that the plaintiff must show that the machine was being used in a manner which could have been reasonably anticipated. See Keener v. Dayton Electric Mfg. Co., 445 S.W.2d 362 (Mo.1969) and Maryland

Casualty Co. v. Dondlinger & Sons Const. Co., 420 F.2d 1368 (8th Cir. 1970).

In Higgins v. Paul Hardeman, Inc., 457 S.W.2d 943 (Mo.App.1970) the Missouri court discussed the concept of intended use in terms of foreseeability.

"Defendants then contend that plaintiff failed to make a submissible case because as a matter of law the hoist was being used in a manner for which it was not intended. The Restatement, § 402A, supra, at Comment (h), paraphrased in the light of the facts of this case, requires a product to be safe for normal use; if it is abnormally used and injury results, then the product may not be found to be in a defective condition. Keener, supra, directs this issue to be submitted in language hypothesizing the use of the article 'in a manner reasonably anticipated'. The statement to the effect defendants are not liable for injuries resulting from abnormal use is only true if such abnormal use was not reasonably foreseeable. 'The issue is one of foreseeability, and misuse may be foreseeable.' Products Liability, Frumer & Friedman, § 15.01. Foreseeable use may be different from its intended use and includes any particular use which should be known to a reasonably prudent manufacturer. Dunham v. Vaughan & Bushnell Mfg. Co., 86 Ill.App.2d 315, 229 N.E.2d 684. The evidence that there were a number of duties which a driver had to do as part of normal maintenance and which could only or which could best be performed when the bed of the truck was in a raised position established this element of plaintiff's case." *Higgins,* supra at 948.

Harper and James in discussing intended use observe:

"The maker of an article for sale or use by others must use reasonable care and skill in designing it and providing specifications for it so *that it is reasonably safe for the purposes for which it is intended, and for other uses which are foreseeably probable. . . .*" (emphasis added).

2 H. Harper & F. James, The Law of Torts, § 28.4 at 1541 (1956).

See also Passwaters v. General Motors Corp., 454 F.2d 1270, 1275–1276 n.5 (8th Cir. 1972); Mazzi v. Greenlee Tool Co., 320 F.2d 821 (2d Cir. 1963).

■ The intended use doctrine necessarily includes foreseeable consequences of (unintentional) misuse. However, on the record here, there is no affirmative showing that Hoppe was misusing the machine. According to his foreman it was normal usage to operate a manual override solenoid valve with the air still on. This court has no special knowledge gained from this record, or from our own experience, which enables us to conclude as a matter of law that Hoppe was misusing the machine. Obviously, with hindsight, it is easy to conclude that the accident would not have happened had the air been turned off. However, this is nothing more than "but for" rationalization and hardly rules out that it was reasonably foreseeable, without specific warning to the contrary, that a user of the machine would attempt to operate the machinery by use of the manual override valve when the compressed air was still turned on.

■ Defendant alternatively urges that the trial judge's directed verdict should be sustained since Hoppe was contributorily negligent as a matter of law. We hold that he was not. In Williams v. Ford Motor Co., 454 S.W.2d 611 (Mo.App.1970), the court restricted the application of the general rule governing contributory negligence in strict liability and warranty cases. The court observed:

> "The foregoing view that contributory negligence is not available as a defense to 'strict liability in implied warranty' or to 'strict liability in tort' as adopted by Keener v. Dayton Electric Manufacturing Co., supra, is equally founded upon the prior law. As noted strict liability in tort does not rest upon negligence. *'The term "contributory negligence" necessarily presupposes negligence for which de-*

*fendant is responsible, which would sustain an action but for the concurrence of the contributory negligence.'* . . . *By analogy, contributory negligence is not a defense to willful and wanton negligence.* . . . *Nor is a defense of contributory negligence available as a defense to actions based on defendants' intentional conduct.* . . . *Contributory negligence is not available as a defense to a warranty case."* Williams, supra at 618–619. (emphasis added).

See also Keener v. Dayton Electric Mfg. Co., 445 S.W.2d 362, 365 (Mo.1969). In Higgins v. Paul Hardeman, Inc., 457 S. W.2d 943 (Mo.App.1970), the court explains that a plaintiff may only be barred from recovery if he unreasonably uses a product *after* he discovers the defect. The court there observed:

> " 'If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery.' . . . Regardless of the name of the defense, be it assumption of risk or contributory fault or whatever name the court then considering the matter may assign to it, the gut issue is not whether the defect was discovered but whether the product was unreasonably used after discovery of the defect." Higgins, supra at 948.

We have no difficulty in resolving that plaintiff has established a prima facie case worthy of jury consideration.

■ The second issue the plaintiff urges is that the trial court erred in excluding certain testimony of plaintiff's expert. Since the case has to be retried, we deem it necessary to comment on these rulings. Basically, the plaintiff complains that Dr. Dreifke, the design engineer, was not allowed to testify regarding his opinion and interpretation of the plans prepared by the defendant. The trial court felt that the plans were immaterial and that the only relevant proof related to the condition of the machine as it was installed. Further the trial court excluded proof as to whether

the valve could have been feasibly and economically located elsewhere, and testimony as to the location of the valve as set forth in the plans and specifications.

■■■ We think the court erred and was unduly restrictive in ruling on the admissibility of Dr. Dreifke's testimony on this subject matter. See Sutkowski v. Universal Marion Corp., 281 N.E.2d 749 (Ill.App.1972). Cf. Twin City Plaza, Inc. v. Central Surety & Ins. Corp., 409 F.2d 1195 (8th Cir. 1969). An expert witness is called primarily to aid the trier of fact in understanding evidence which is of a highly technical nature. His testimony is appropriate when his unusual knowledge, by reason of skill, experience or education may lend meaningful insights and better comprehension of technical evidence. Here plaintiff's theory was based on dangerous design of a highly complicated piece of machinery. Liability alleged from defective design encompasses many factors not generally relevant to ordinary negligence in tort cases. The comparative design with similar and competitive machinery in the field,[2] alternate designs and post accident modification of the machine,[3] the frequency or infrequency of use of the same product with or without mishap, and the relative cost and feasibility in adopting other design are all relevant to proof of defective design. Cf. McCormack v. Hankscraft Co., 278 Minn. 322, 154 N.W.2d 488 (1967); Wehrli v. Wabash R. R., 315 S.W.2d 765

(Mo.1958); Brown v. Quick Mix Co., 75 Wash.2d 833, 454 P.2d 205 (1969) (en banc); Noel, Manufacturer's Negligence of Design or Directions for Use of Product, 71 Yale L. J. 816, 848–853 (1962).

It is apparent from the colloquy of court and counsel that a misunderstanding arose between the trial court and plaintiff's counsel over plaintiff's theory of liability arising from improper design. Plaintiff's complaint, at least under federal notice pleading, was sufficient to place both court and opposing counsel on notice of his counts based on warranty and strict liability arising from defective design. Under both counts the plans were admissible and were susceptible of expert explication to aid the jurors' understanding.

■■ ■■ The record is replete with argumentative discussion between counsel and the court, much of it within the presence of the jury during the testimony of Dr. Dreifke. Many of the statements are confusing to this court and we are convinced they would be even more perplexing to a lay jury. We are constrained to say that most if not all of the objections made by counsel and the commentary by the court were unnecessary and time-consuming. A witness, particularly one as experienced and well-trained as Dr. Dreifke, deserves greater courtesy and a less restricted atmosphere to present his testimony than was provided here. Opposing counsel should never attempt to frustrate the ex-

2. See Blohm v. Cardwell Manufacturing Co., 380 F.2d 341 (10th Cir. 1967).

3. In Sutkowski v. Universal Marion Corp., 281 N.E.2d 749, 753 (Ill.App.1972), the court observed:

"In the development of product's liability principles design alternatives are appropriately considered whether reasonable care is the basis of liability or where liability is predicated upon strict tort liability. . . . In both cases it appears that policy considerations are involved which shift the emphasis from the defendant manufacturer's conduct to the character of the product. Such change in emphasis furnishes additional reasons for permitting evidence of alternative designs in a strict tort liability case.

"The possible existence of alternate designs introduces the feature of feasibility since a manufacturer's product can hardly be faulted if safer alternatives are not feasible. In this connection feasibility includes not only the elements of economy, effectiveness and practicality but also the technological possibilities viewed in the present state of the art. If the feasibility of alternative designs may be shown by the opinions of experts or by the existence of safety devices on other products or in the design thereof we conclude that evidence of a post occurrence change is equally relevant and material in determining that a design alternative is feasible."
See also Wallner v. Kitchens of Sara Lee, Inc., 419 F.2d 1028 (7th Cir. 1969).

amination of a witness by argumentative objections. He always has ample opportunity to cross-examine a witness as to any points of weakness his adversary may have overlooked. Cf. Twin City Plaza, Inc. v. Central Surety & Ins. Corp., 409 F.2d 1195 (8th Cir. 1969). In the orderly administration of justice any witness's examination should be designed to make the solicited testimony communicative and readily understandable to the trier of fact. This goal is not attained when there is constant interruption of the examination by either the court or opposing counsel. Only when the outer boundaries of relevancy or prejudicial misconduct are approached should a lawyer be restricted in examination of a witness, otherwise the court and both counsel should strive to see interrogation of a witness go unimpeded by needless objection or judicial comment. This does not mean that counsel must waive all objections or a trial judge should not intervene when necessary. Our observations are germane only when the orderly progress of the trial is abused as this court feels it was here.

■ Defendant raises an alternative ground on which it suggests the trial court should be affirmed. The argument is made that since Fisher Body was a co-plaintiff in the trial court and failed to perfect its appeal that the judgment against Fisher Body is res judicata against the plaintiff Hoppe. This claim is without merit.

■ Under § 287.150 of the Missouri Revised Statutes, V.A.M.S., the employer is subrogated to the right of the employee against third parties for the amount of workmen's compensation paid to the employee. Missouri law is clear that an employee or employer may proceed jointly or separately against a negligent third party.

In State ex rel. Royal-McBee Corp. v. Luten, 390 S.W.2d 931, 934 (Mo.App. 1965), the rule is stated:

"Section 287.150 does not take away from the employee his common law right of action against the third party tort-feasor, Schumacher v. Leslie, 360 Mo. 1238, 232 S.W.2d 913; Bunner v. Patti, 343 Mo. 274, 121 S.W.2d 153. *Regardless of the employer's rights of subrogation the employee remains a real party in interest and may bring suit for all of his damages."* (emphasis added).

There can be no prejudice to plaintiff Hoppe in Fisher Body's failing to appeal. It is clear under the circumstances existing here that the employer is simply a formal party, not necessary to the adjudication of any of the issues between the injured employee and the defendant.

Judgment reversed and remanded for new trial.