546 P.2d 1207

**Guy DEEM, Individually and as Guardian of the Person and Estate of Eric Deem, a minor, Plaintiff-Appellant,**

v.

**WOODBINE MANUFACTURING COMPANY, Defendant-Appellee.**

No. 1850.

Court of Appeals of New Mexico.

Feb. 3, 1976.

Certiorari Granted March 12, 1976.

Original Proceeding on Certiorari Decision April 22, 1976.

See 89 N.M. 172, 548 P.2d 452.

David R. Gallagher, Gallagher, Ruud & Casados, Albuquerque, for plaintiff-appellant.

Bruce D. Black, Dale W. Ek, Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, for defendant-appellee.

## OPINION

SUTIN, Judge.

This is a products liability case tried by the court. It involves a hydraulic lift gate manufactured by the defendant and attached to the rear end of a delivery truck. Eric Deem, a four-year-old child, operated the lift gate and was injured. At the close of plaintiffs' case, the trial court granted defendant's motion to dismiss under Rule 41(b) of the Rules of Civil Procedure [§ 21–1–1(41)(b), N.M.S.A. 1953 (Repl.Vol. 4)]. Plaintiffs appeal. We reverse.

The trial court made the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. Since 1965 Defendant, Woodbine Mfg. Co., has manufactured and sold several thousand hydraulic lift gates for pickup trucks, which gate is commonly known as a "Tommy Lift Gate".

2. The "Tommy Lift Gate" was patented in February 1967, and is a lift gate of simple design and economical construction to be used on small trucks for the purpose of aiding in the loading and unloading of the same.

3. At all times material hereto, no changes have been made in the design and the manufacture of the "Tommy Lift Gate" except to increase the load capacity of the gate.

4. Prior to December 24, 1969, Albuquerque Appliance Renew, an Albuquerque reconditioned appliance dealer, had installed on a vehicle used in its business a "Tommy Lift Gate".

5. On December 24, 1969, Albuquerque Appliance Renew delivered a stove to the residence of the Plaintiffs, said delivery being made in a pickup upon which the "Tommy Lift Gate" had been installed.

6. The unloading of the stove, including the operation of the lift gate, was observed by the Plaintiff, Eric Deem, age four, and his sister, Lisa Deem, age five, who were standing close to the lift gate.

7. To operate the lift gate, assuming the gate is in an upright position and locked, the first step in the operation of the gate would be to manually unlatch the platform by removing the two latches on each side of the gate, the gate would then be manually dropped to a horizontal position at the level of the bed of the vehicle, the load then would be set upon the platform while in a horizontal position, the control level located on the left side of the truck would be raised on a vertical plane which would allow the gate to move towards the ground, once the gate is at ground level this load would be removed, and by pushing the control lever down on a vertical plane, the gate would be moved from the ground level to the level of the bed of the vehicle and then the gate would be closed in an upright position and latched manually.

8. After removing the stove from the platform while the same was at ground level, the delivery man did not raise the platform to a level of the bed of the vehicle and close and manually latch the same, but proceeded to move the stove into Plaintiffs' residence.

9. While the stove was being moved into Plaintiffs' residence, Plaintiff, Eric

Deem, and his sister, Lisa Deem, started playing on the lift and giving each other rides thereon and while playing thereon, Eric Deem's left foot was caught in the moving parts of the lift located near the control lever.

10. Safety devices incorporated in the "Tommy Lift Gate" included a manual latching device which can be used when the lift is in an upright position and results in the lift being inoperative, warning instructions which are contained on a label placed on the unit at the factory and located near the operating level which warns individuals to keep their hands out of moving parts, the operating lever incorporates a spring mechanism which would require the exertion of approximately three to four pounds pressure, either up and down, if the lift is to be raised or lowered, and upon the release of the lever, it will return to a neutral position and movement of the lift will be stopped, and a lock device is an available option which will allow the operator to lock the lift in any position.

11. If the manual latching safety device had been used, the accident would not have occurred.

12. Safety devices incorporated in similar lift gates manufactured by competitors of the Defendant are substantially the same as incorporated in the "Tommy Lift Gate".

13. Since 1965 the "Tommy Lift Gate" has been used without the occurrence of any known injury to a minor and without any known injury of the kind sustained by the Plaintiff, Eric Deem.

14. The Defendant manufacturer exercised reasonable care in the design of the "Tommy Lift Gate", including incorporation of adequate safety devices therein.

15. The "Tommy Lift Gate", including the safety devices incorporated therein, was safe for its intended use and for the use which could be reasonably anticipated.

16. Other possible designs incorporating additional safety devices, which are not now in use by the lift gate industries, would not have necessarily prevented the injury of the kind and nature sustained by the Plaintiff, Eric Deem.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the subject matter and the parties hereto.

2. The "Tommy Lift Gate" manufactured by the Defendant was not manufactured in a defective condition.

3. The "Tommy Lift Gate" manufactured by the Defendant was not unreasonably dangerous to a user or consumer.

4. At all times material hereto, the "Tommy Lift Gate" was not used in a way in which it was intended.

5. The "Tommy Lift Gate" is not unsafe for its intended use.

6. The proximate cause of the injuries of which the Plaintiffs complaint [sic] was not the condition of the "Tommy Lift Gate".

7. The Defendant manufacturer exercised due, ordinary, and reasonable care in the design of the "Tommy Lift Gate".

8. The Defendant could not reasonably expect the Plaintiff, Eric Deem, to use the "Tommy Lift Gate" or to be endangered by its probable use.

9. The Defendant manufacturer could not reasonably foresee that Albuquerque Appliance Renew would use the lift gate in an obviously dangerous way when safe methods of use were readily apparent and available.

10. The proximate cause of the injuries of which the Plaintiff complaint [sic] was the negligence of a party other than the Defendant manufacturer.

Plaintiffs challenge the court findings No. 14, 15 and 16, and its conclusions No.

8, 9 and 10. Plaintiffs also claim error in the failure of the trial court to adopt some of their requested findings.

A. *Application of Rule 41(b)*

Rule 41(b) of the Rules of Civil Procedure provides for involuntary dismissal. In substance, in a non-jury trial, at the close of plaintiff's case, the trial court may find the facts and render judgment against the plaintiff.

A host of New Mexico decisions guide us in the application of this rule.

■■■ It is the duty of the trial court to give plaintiff's evidence and testimony such weight as it believes it is entitled to receive. In doing so, the trial court has no right to disregard evidence which is uncontradicted and unimpeached and find contrary thereto. Findings which are diametrically opposed to such evidence lack support. *Lorenzo v. Lorenzo*, 85 N.M. 305, 512 P.2d 65 (1973); *Frederick v. Younger Van Lines*, 74 N.M. 320, 393 P.2d 438 (1964).

Upon review of the trial court's findings, we will view the evidence in the light most favorable to the defendant to determine whether the findings are supported by substantial evidence. *Blancett v. Homestake-Sapin Partners*, 73 N.M. 47, 385 P.2d 568 (1963).

B. *A Summary of Facts and Conclusions*

We recognize the difficulties which arise (1) when we seek to determine what "findings of fact" made by the trial court are ultimate facts necessary to determine the issues in the case and (2) what "conclusions of law" state the conclusions deduced from the ultimate facts. Sometimes we say the "findings" or "conclusions" contain mixed questions of law and fact; that the "findings" contain evidentiary matters or "conclusions of law". Often, as shown in this case, we note "findings of fact" restated as "conclusions of law". We can titillate ourselves on this subject, but to do so does not assist us in arriving at an opinion.

We can best resolve this problem by stating the facts which are uncontradicted and unimpeached, and then determine whether the conclusions, deduced from the facts, properly denied relief under the doctrine of products liability.

The facts in this case are undisputed.

The defendant manufactured and sold a hydraulic lift gate which would be attached on the rear of a pickup truck. The lift gate is used to assist in the loading and unloading of heavy merchandise such as stoves. The method of operation is described in the court's finding No. 7. Albuquerque Appliance Renew had defendant's hydraulic lift gate attached on the rear of its truck. It delivered a stove to plaintiffs' residence. The driver lowered the lift gate to its ground level, removed the stove to plaintiffs' home, and left the lift gate at its ground level. Eric Deem, age four and his sister, Lisa Deem, age five, were standing close to the lift gate and observed the unloading, including the operation of the lift gate by a control level. Eric could easily use the control lever to operate the lift gate. He did operate the lift gate up and down and while doing so, his left foot was caught in the moving parts of the lift located near the control lever, resulting in his injury.

The defendant knew that his hydraulic lift gate would be used to a great extent in residential home areas. By expert testimony, plaintiffs proved that the optional lock device mentioned in finding No. 10 was a safety device which would, if installed, replace the control lever. This safety device would prevent Eric from operating the lift gate. It was not on the lift gate. Defendant made this lock device optional because different distributors asked for it. When defendant first designed it, it was trying to design it for rental purposes. At least one other manufacturer did have the key lock system on its hydraulic lift gate. This de-

vice could be installed at nominal expense. By expert testimony, plaintiffs proved that the manual latching device set forth in the trial court's finding No. 10 was not a safety device because it was a part of the operation of the lift gate. The lift gate was unreasonably dangerous to a user such as Eric Deem.

The plaintiffs submitted requested findings supported by these facts, but these findings were denied.

C. *Facts v. Findings*

■ There was no evidence (1) that the lift gate had any safety devices on it as stated in finding No. 10; or (2) that safety devices incorporated in similar lift gates manufactured by competitors of defendant are substantially the same as those of defendant's as stated in finding No. 12.

Findings No. 14, 15 and 16 are not supported by any evidence.

The defendant reserved its testimony and failed to present any evidence to support the findings supra. These were requested findings defendant submitted to the trial court and which the trial court adopted. There was no contradictory evidence.

It appears that the trial court's "conclusions" are in effect findings of ultimate facts.

Whether defendant's lift gate was unreasonably dangerous for failure to incorporate certain safety devices which plaintiffs' evidence shows were available at the time the lift gate left defendant's control is a question of fact for the trier of the facts. *Zahora v. Harnischfeger Corporation,* 404 F.2d 172 (7th Cir. 1968); *Rivera v. Rockford Machine & Tool Company,* 1 Ill.App. 3d 641, 274 N.E.2d 828 (1971). So is the question of "foreseeability". *Johnson v. American Motors Corporation,* 225 N.W.2d 57 (N.D.1974); *Winnett v. Winnett,* 57 Ill.2d 7, 310 N.E.2d 1 (1974).

The facts established that defendant's manufacture of the hydraulic lift gate made under its design was unreasonably dangerous to a user such as Eric Deem; that, absent the key lock system, the de-

fendant did not exercise reasonable care in designing the lift gate.

A proper conclusion of law would be one which describes the nature of the duty which a manufacturer owes to a user of its product. *Zahora,* supra; *Rivera,* supra.

D. *Liability of a manufacturer under Restatement, Torts, 2d, § 402A and § 398 constitutes the same claim for relief.*

We have adopted the doctrine of special liability of the seller of a product for physical harm to a user or consumer, pursuant to Restatement, Torts, 2d, § 402A (1965), at 347–348. *Stang v. Hertz Corporation,* 83 N.M. 730, 497 P.2d 732 (1972); *First Nat. Bk., Albuquerque v. Nor-Am Agr. Prod., Inc.,* 88 N.M. 74, 537 P.2d 682 (Ct. App.1975).

Paraphrasing the pertinent parts of § 402A: A manufacturer of a product (1) *in a defective condition, unreasonably dangerous* (2) *to the user or consumer,* is subject to liability *if the manufacturer expects its product to reach the user or consumer, and the product does reach the user or consumer* (3) without substantial change in the condition in which it is sold, *even though the manufacturer has exercised all possible care in the preparation and sale of the product.* [Emphasis added]. [537 P.2d at 693].

Section 398 reads as follows:

A manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the chattel or to be endangered by its probable use for physical harm *caused by his failure to exercise reasonable care in the adoption of a safe plan or design.* [Emphasis added].

■ The liability of the manufacturer originates in the same place under § 402A and § 398. It originates in the factory. Under § 402A, we speak in terms of the manufacture of a product in a defective condition, unreasonably dangerous, and

which the manufacturer places in the stream of commerce. Under § 398, we speak in terms of the manufacture of a product under a dangerous design which the manufacturer places in the stream of commerce. Under both sections, the manufacturer is liable to others whom he should expect to use the chattel, when the user is injured as a proximate result of the defect or design of the product. We omit from this analysis that phrase of § 398 which reads "or to be endangered by its probable use" because this phrase applies to a "bystander", not a user. In the instant case, Eric was a user. *First Nat. Bk., Albuquerque,* supra; *Spruill v. Boyle-Midway, Incorporated,* 308 F.2d 79 (4th Cir. 1962).

■ A defect in a product is a dangerous design of the product where safety devices are involved. A dangerous design is a defective product where safety devices are involved. The risk to the user is just as great with an unreasonably dangerous design defect as with a manufacturing defect.

When § 398 emerged on the scene in products liability cases, the courts could not distinguish between the two sections as far as liability was concerned. As a result, the liability of the manufacturer under §§ 402A and 398 being the same, a user had only one claim for relief. *Rindlisbaker v. Wilson,* 95 Idaho 752, 519 P.2d 421 (1974); *Roach v. Kononen,* Or., 525 P.2d 125 (1974); *Jones v. Hutchinson Manufacturing, Inc.,* 502 S.W.2d 66 (Ky.1973); *Pike v. Frank G. Hough Company,* 2 Cal.3d 465, 85 Cal.Rptr. 629, 467 P.2d 229 (1970); *Wright v. Massey-Harris, Incorporated,* 68 Ill.App.2d 70, 215 N.E.2d 465 (1966); *Bolm v. Triumph Corporation,* 33 N.Y.2d 151, 350 N.Y.S.2d 644, 305 N.E.2d 769 (1973); *Bradford v. Bendix-Westinghouse Auto. Air Brake Co.,* 33 Colo.App. 99, 517 P.2d 406 (1973); *Hoppe v. Midwest Conveyor Company, Inc.,* 485 F.2d 1196 (8th Cir. 1973); *Rourke v. Garza,* 511 S.W.2d 331 (Tex.Civ.App.1974); *Johnson v. American Motors Corporation,* supra.

There are divergent views on the subject. *Roach,* supra. *Pike,* supra, has been uniformly followed in various states. We adopt the following language from that case:

Most reported cases in California and other jurisdictions have applied strict liability to products containing defects in their manufacture; few have involved defects in design. However, there is no rational distinction between design and manufacture in this context, since a product may be equally defective and dangerous if its design subjects protected persons to unreasonable risk as if its manufacture does so. [85 Cal.Rptr. at 636, 467 P.2d at 236].

1. *The lift gate was unreasonably dangerous for use by Eric.*

■■ "Liability can be based on failure to provide safety devices." *Byrnes v. Economic Machinery Company,* 41 Mich.App. 192, 200 N.W.2d 104, 107 (1972), and cases cited. A product is unreasonably dangerous when the product lacks safety devices necessary to its reasonable safety. *Garcia v. Halsett,* 3 Cal.App.3d 319, 82 Cal.Rptr. 420 (1970); *Wright v. Massey-Harris, Incorporated,* supra; *Pike v. Frank G. Hough Company,* supra; *Higgins v. Paul Hardeman, Inc.,* 457 S.W.2d 943 (Mo.App. 1970) (hoist on dump truck).

The lift gate had no safety devices on it. The defendant failed to attach its optional lock device as a safety factor. We can appropriately consider this alternative design where liability is predicated upon the doctrine of strict liability. *Sutkowski v. Universal Marion Corp.,* 5 Ill.App.3d 313, 281 N.E.2d 749 (1972); *McCormack v. Hankscraft Company,* 278 Minn. 322, 154 N.W.2d 488 (1967); *Rivera,* supra.

*Rivera* said:

A manufacturer is required to adopt any and all devices the absence of which render his product unreasonably dangerous. [274 N.E.2d at 833].

■ Under § 402A, defendant's expectation that the lock device or any safety

device would be provided by the purchaser is not relevant. *Finnegan v. Havir Manufacturing Corp.*, 60 N.J. 413, 290 A.2d 286 (1972); *Bexiga v. Havir Manufacturing Corp.*, 60 N.J. 402, 290 A.2d 281 (1972).

■ The record established that the lock device system would have prevented use by Eric of the hydraulic lift gate. It was designed by defendant. It was available at a nominal expense and it constituted a safe design. Absent the safety factor, the uplift gate was unreasonably dangerous for use by Eric. If the lock system had been installed, Woodbine would have had a good defense to special liability.

We hold as a matter of law that defendant Woodbine had a duty to adopt the lock device system as a safe method of preventing injury to children.

2. *The manufacturer could expect the lift gate to reach Eric for use.*

The only remaining issue is: Could the manufacturer reasonably expect the hydraulic lift gate to reach Eric Deem, the user?

What is meant by the phrase that a manufacturer is liable, as paraphrased herein under § 402A, "if the manufacturer *expects* its product to reach the user" or, as stated in § 398, "to others whom he should *expect to use* the chattel"?

We have adopted as a guide that "[T]he benefits of the rule of strict liability extend 'to all whom the manufacturer should *reasonably* expect to use his product.'" *First Nat. Bk., of Albuquerque*, 537 P.2d at 694.

In *Eshbach v. W. T. Grant's and Company*, 481 F.2d 940, 942–43 (3rd Cir. 1973), the court said:

The focus of § 402A . . . is not directed to the foreseeability of a given injury, but to whether "the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him". § 402A, comment G. In actions brought pursuant to § 402A "[t]he duty of a manufacturer or

supplier is limited to foreseeing the probable results of the normal use of the product *or a use which can be reasonably anticipated*." [Emphasis added].

We must determine under the facts of this case whether a use of the lift gate by Eric Deem could be reasonably anticipated.

■ "The standard imposed is the use which a reasonable manufacturer would anticipate as likely enough to be taken into account." *Dunham v. Vaughan & Bushnell Mfg. Co.*, 86 Ill.App.2d 315, 229 N.E. 2d 684 at 691 (1967). So that where a manufacturer should know of a particular use of his product, such use cannot be labelled unforeseeable. Id. For example, although a chair is ordinarily used for sitting, a manufacturer can reasonably anticipate that the chair would be used for standing thereon. *Phillips v. Ogle Aluminum Furniture*, 106 Cal.App.2d 650, 235 P. 2d 857 (1951).

■ Eric did not use the uplift gate for the purpose for which it was manufactured. However, this doctrine applies, not only to purposes for which the product is intended, but "for other uses which are foreseeably probable." *Hoppe*, supra, 485 F.2d at 1200.

■ The defendant knew that this lift gate would be used to a great extent in residential home areas. It does not require syllogistic reasoning to conclude that (a) defendant should have known that the vehicle would be left in the presence of children, (b) the children would see the lift gate operated, (c) the lift gate would reach them when the uplift gate was left in operating condition, and (d) the children would use the lift gate via the control lever. This was a reasonable anticipation "likely enough to be taken into account." This use was "foreseeably probable."

■ The reason is obvious. The manufacturer must be "expected to anticipate the environment which is normal for the use of his product and where, as here, that environment is the home, he must anticipate the reasonably foreseeable risks of

the use of his product in such an environment. These are risks which are inherent in the proper use for which his product is manufactured." *Spruill v. Boyle-Midway, Incorporated,* at 83–84, cited in *First Nat. Bk., Albuquerque,* supra.

Public policy under § 402A was set forth in *First Nat. Bk., Albuquerque* [537 P.2d at 695]. This protection has been extended to children in the home. *First Nat. Bk., Albuquerque,* supra; *Spruill,* supra; *McCormack,* supra. It has been extended to children who visit a laundromat accompanied by a mother and who are injured by a defective washing machine. *Thomas v. General Motors Corporation,* 13 Cal.App. 3d 81, 91 Cal.Rptr. 301 (1970). It has also been extended to an infant child who jumped on "a riding, or sit-on type, 24-inch lawnmower" operated by her brother. While the mower was circling a tree, her foot slipped into an unguarded chain and sprocket of the machine and became entangled. *Eshbach,* supra.

We conclude this point with a quotation from Phillips, Products Liability For Personal Injury To Minors, 56 Va.L.Rev. 1223 at 1224:

Inherent in this preferred position are certain assumptions, not the least important of which is that a child cannot be expected to use a product in ways that a reasonable adult would. For instance, one may expect a child of two or three to ingest anything that it is capable of putting into its mouth, no matter how foul-smelling or ill-tasting the thing may be. One may also assume that young children will, out of curiosity, ignorance, or both, expose themselves to danger in ways unexpected of normal adults.

For the manufacturer or seller of products likely to reach the hands of children, these assumptions pose formidable possibilities of liability. If a product is "defective" in the sense that it is unsuitable for the purposes for which it is made, the law imposes liability on the seller or manufacturer for injuries to person or property resulting from the defect without regard to privity or even negligence on the part of the manufacturer or seller. This liability has been a bitter pill for manufacturers to swallow, but it rests on sound foundations of public policy and appears to be here to stay. If a manufacturer wants to avoid such liability, it can produce products that are not defective. If that is impossible, then as between two innocent parties, the manufacturer and the user, the manufacturer should bear the loss and absorb it in increased prices.

■ Because this case is a matter of first impression in New Mexico, we have carefully reviewed the law and the citations. The evidence presented by the plaintiffs was sufficient to establish a claim for relief under Restatement of Torts, 2d, §§ 402A and 398. The hydraulic uplift gate was manufactured in a defective, unreasonably dangerous condition, and Eric was a foreseeable user.

E. *The uplift gate was the proximate cause of Eric's injuries.*

The trial court concluded that:

10. The proximate cause of the injuries of which the Plaintiff complaint [sic] was the negligence of a party other than the Defendant manufacturer.

Defendant contends that "Albuquerque Appliance Renew failed to take advantage of at least two methods of safe use which were readily apparent."

(1) Defendant offered Albuquerque Appliance Renew a safety key lock as an option. We have already decided, supra, that defendant's expectation that the lock device would be provided by Albuquerque Appliance Renew is not relevant. *Finnegan,* supra; *Bexiga,* supra.

(2) Its delivery man failed to lower the control lever until the gate was fully raised, then manually latch the gate locks. If the delivery man had followed this procedure, Eric could not have operated the lift. We have already decided that this was reasonably foreseeable by defendant.

Under the doctrine of legal cause, the negligent intervention of Albuquerque Appliance Renew, causing the same harm as that risked by defendant, does not relieve defendant of liability unless the intervening cause which produced the result was not reasonably foreseeable. *First Nat. Bk., Albuquerque*, supra.

The conclusion of law, supra, is erroneous on the issue of proximate cause. The uplift gate left in a dangerous condition was the proximate cause of Eric's injuries.

The trial court erred in granting defendant an involuntary dismissal.

We wish to make it clear that this opinion does not conclude the issues of this case with finality. It merely spares the plaintiffs a Rule 41(b) dismissal.

Pursuant to *Bogle v. Potter*, 68 N.M. 239, 360 P.2d 650 (1961), this case is remanded to the trial court, with instructions to set aside its findings of fact and conclusions of law and the judgment flowing therefrom, and to reset this case for a new hearing, at which time defendant may proceed with its defense and the plaintiffs with their rebuttal, and thereafter render its decision and its judgment based thereon.

IT IS SO ORDERED.

LOPEZ, J., concurs.

HERNANDEZ, J., dissents.

HERNANDEZ, Judge (dissenting).

I respectfully dissent from the majority opinion for the reason that the decision represents an extension of Restatement of Torts 2d, § 402A, which places strict liability on the manufacturer of defective products unreasonably dangerous to the user, to reach optional safety devices. This view is as yet unsupported in New Mexico case law. I would affirm defendant's motion to dismiss.