**Paul Wilson WEBB, Plaintiff-Appellant,**

v.

**RODGERS MACHINERY MFG. CO., et al., Defendants-Appellees.**

**No. 83-2672.**

United States Court of Appeals, Fifth Circuit.

Jan. 11, 1985.

Rehearing Denied Feb. 8, 1985.

Frank L. Supercinski, Longview, Tex., for plaintiff-appellant.

Thompson & Knight, David R. Noteware, Dallas, Tex., for W.F. Powell.

David A. Sanders, Jr., pro se.

Roberts & Harbour, John M. Smith, Earl Roberts, Jr., Longview, Tex., for Rodgers Machinery.

Before CLARK, Chief Judge, JOHNSON, and WILLIAMS, Circuit Judges.

JOHNSON, Circuit Judge:

Paul W. Webb appeals from a directed verdict in favor of defendant Rodgers Machinery Manufacturing Co., Inc. ("Rodgers") on a products liability action instituted by Webb for injuries he sustained while working on a wood shaper. The district court's analysis, centering on the issue of causation, held (1) that no defect in the shaper caused Webb's injuries; and (2) that Rodgers, in any event, should bear no lia-

bility since Webb's employer had substantially modified the shaper.

Defendant Rodgers also urges to this Court that it cannot be held liable for defects of the shaper which injured Webb since it was manufactured, not by the defendant Rodgers corporation, but by a preceding proprietorship also known as Rodgers Machinery Manufacturing Co. Defendant Rodgers contends that the district court erroneously applied California law on this question and that, as a matter of Texas law, defendant Rodgers is not liable.

We reverse the district court's directed verdict in favor of defendant Rodgers on the causation and substantial modification issue. We also hold that the district court did not err in choosing California law to determine whether defendant Rodgers may be held liable for the torts of the preceding Rodgers. We deal with the facts and merits of each of these two issues separately.[1]

## I. THE DIRECTED VERDICT

### A. *Background*

On the date of the accident, Webb, 18, was a distributive education student working for Sanders Manufacturing Co. in Gainesville, Texas. Webb, operating a shaper for the first time, was instructed to shape pieces of wood by manually passing the pieces of wood against the shaper's cutting knives. This is a method of shaping called "straight-line shaping." Record Vol. III at 59, 80–81. Working with another employee, Webb fed the pieces of wood, which were approximately twelve feet long, into the shaper by sliding the wood along a fence (a rigid barrier) on the shaper's table top. As the first piece of wood reached the edge of the table, Webb released it and bent over to pick up another piece of wood. As Webb did so, he heard the shaper make an odd sound. A piece of wood, approximately six inches long with a diameter about the size of a dime, shot out from the

cutting head and penetrated Webb's hip, causing injury.

Testimony at trial indicated that the shaper was manufactured sometime between 1930 and 1959. Record Vol. III at 71. The trial court assumed (for the purposes of consideration of the directed verdict) that the shaper (as it was originally sold) consisted of a base, the table top, and a spindle assembly to which the owner of the shaper could attach the cutting knives. Testimony at trial indicated that shapers have two general purposes in wood shaping: straight-line shaping and contour shaping. Record Vol. III at 80–81. In order to engage in straight-line shaping, an operator needs a fence (or barrier) on the shaper's table top in order to guide the wood in a straight line of travel and to keep the wood in a certain posture as the wood is passed against the shaper's cutting knives. Since the shaper purchased by Sanders did not have a fence, Sanders installed his own. The fence installed by Sanders was "nonadjusting" in that it could not be adjusted to varying sizes according to the thickness of the wood. Sanders also installed a "featherboard" or "hold-down" on the shaper. This featherboard, which was also fixed and not adjustable, was used to hold the wood down against the fence and knives.

Webb's expert, Gerald Rennell, testified that four possible problems could have caused the piece of wood to kick back out of the shaper and strike Webb. He suggested that the wood may have had a knot in it, that the wood may have had a slit in it that broke as it passed through the shaper, that the wood may have been smaller than the thickness for which Sanders had designed the fence and featherboards, and that the blades might have made too deep a cut in the wood. Expert testimony at trial indicated that kickback from these and similar problems in the wood was a possible

---

**1.** We emphasize at the outset the limited scope of this appeal. We deal only with the issues presented—whether the district court was correct in directing a verdict on the issue of causation and substantial modification and whether

the district court properly chose to apply California law on the question of successor liability. Hence, the remaining issues—both on the facts and the law—are for the district court on remand.

and foreseeable danger from straight-line shaping.

Webb's experts testified that several safety devices could have minimized the danger of the type of kickback that led to Webb's injuries. These experts testified that these devices were technologically feasible well before the time the shaper in question was manufactured. Record Vol. III at 171–72, 177. One of these devices was an adjustable fence. An adjustable fence, according to this testimony, keeps the wood in constant contact with the shaper's cutting knives. Record Vol. III at 91, 176. Likewise, a properly installed adjusting featherboard, according to expert testimony, could have reduced the risk of kickback by keeping the wood on the table and against the fence and knives. Record Vol. III at 91–92. An anti-kickback device was a third proffered safety device. An anti-kickback, consisting of a curved edge with teeth that face the shaper's cutting knives, would have allowed the wood to proceed under the anti-kickback as a piece of wood was inserted in the shaper. When the kickback occurred, the anti-kickback's teeth could have bitten into the wood to hold it more firmly. Record Vol. III at 169–71. A fourth device suggested by Webb's expert testimony was a body barrier, which would have served as a shield against any wood that might have split off the lower part of wood inserted into the shaper. Record Vol. III at 176–177.

Upon the close of the plaintiff's case, the court granted the defendant's motion for a directed verdict. The court held, first, that no design defect in the shaper, as it was originally manufactured, caused Webb's injuries. The district court pointed to Rennell's testimony that a problem in the wood caused the accident and suggested that, if anything failed on the machinery, it was Sanders' fence and featherboard but not the shaper as it was originally manufactured. Alternatively, the district court held that Sanders' modifications were so substantial as to relieve the defendant Rodgers of any liability for the originally manufactured product.[2]

### B. *The Merits*

Plaintiff Webb contends that the district court erred in granting the directed verdict on the issue of causation and substantial modification. Webb also contends that the district court erred in failing to allow him to proceed on a theory of the manufacturer's failure to warn.

### 1. Defective Design.

In federal diversity cases, a motion for directed verdict should be granted only where the evidence, when viewed in the light most favorable to the party opposing the motion, is such that reasonable persons could arrive only at a verdict in favor of the proponent of the motion. *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc).

The defect in the shaper, as alleged by Webb, was defendant Rodgers' failure to equip the shaper safely for one of its

**2.** The district court stated:

The reason for the Court's ruling is that there was subsequent addition to the equipment that amounted to a modification of the operational characteristics and it was [these changed] operational characteristics that failed, if anything failed....

What we have here is a wood shaping system; to the original base, spindle and motor, were attached various devices by Mr. Sanders that completely controlled the passing of the wood through it, the holding of the wood down, maintaining the wood in relationship to the cutting knives by the fence; all the operational characteristics of the system were controlled by the devices that were fabricated and subsequently added by the third-party defendant, Sanders and in the Court's judgment, modified the equipment to the point that it provides the defense to the original manufacturer.

Further, the Court finds that reasonable minds could not differ that the actual cause of the occurrence was a splitting off of a splinter or sliver of the wood.... Mr. Rennell, as I recall, listed about four of the things that could have caused it to split and splinter and Mr. Hume added the factor of vibration caused by a loose featherboard, none of which had anything to do with the equipment as manufactured and sold originally by the defendant....

Record Vol. III at 397–98.

two general functions, straight-line shaping. Webb contended at the trial court and argues here that Rodgers' failure to equip the shaper with a fence, hold-down, anti-kickback, or body barrier was a producing cause of Webb's injury in that installation of these devices by the manufacturer would have prevented Webb's injury. Texas courts have held that a failure to provide safety devices to guard against risks of harm that are engendered by the normal use of the product may render the product unreasonably dangerous.[3] Texas courts have also found failure to provide the safety devices a producing cause of the plaintiff's injury when installation of the safety equipment would have prevented the risk of that injury. *Rourke v. Garza*, 530 S.W.2d 794, 799–801 (Tex.1975); *Foster v. Ford Motor Co.*, 616 F.2d 1304, 1310 (5th Cir.1980) (applying Texas law). In the instant case, Webb produced testimony from which a jury might reasonably conclude that provision of the suggested safety and functional equipment (the adjustable fence, hold-down, anti-kickback or body barrier) would have prevented Webb's injury. Record Vol. III at 54, 82, 88, 93. Thus, a jury might reasonably infer that Rodgers' failure to provide the equipment was a producing cause of the injury.

■ The district court also held that Sanders' modifications absolved Rodgers from liability for any defect in the shaper as it was originally manufactured. Indeed, it is widely accepted that, for a manufacturer to be held liable under a strict liability theory, the product must "reach the user ... without substantial change in the condition in which it is sold." Restatement (Second) of Torts § 402A(1)(b). Plaintiff contends here that Rodgers is nevertheless liable since the alterations here were foreseeable in that the shaper's intended use included straight-line shaping. Courts indeed have noted that "by its very terms, § 402A seems to indicate that only *unexpected* substantial changes will absolve the seller of a product from liability for injuries caused by that product." *Merriweather v. E.W. Bliss Co.*, 636 F.2d 42, 45 (3d Cir. 1980) (applying Pennsylvania law) (emphasis added). Texas courts likewise have noted that a manufacturer may be held liable where the subsequent alteration leading to the accident was foreseeable by the manufacturer.[4] *General Motors Corp. v. Hopkins*, 548 S.W.2d 344, 349 (Tex.1977). Webb introduced evidence by industry experts who testified that Sanders' action in adding the featherboards and fence was foreseeable since straight-line shaping was one of the two intended uses of the product. Record Vol. III at 100, 144. Moreover, these experts testified that the type of modifications performed by Sanders in installing a nonadjusting fence and featherboard was also foreseeable by the manufacturer.[5] From this evidence, a jury might reasonably conclude that Sanders' modifications were foreseeable. Thus, it must be held that the district court erred in directing a verdict on the issue of causation

---

3. The district court granted the directed verdict for the defendant Rodgers on the issue of causation and substantial modification. This appeal is limited to that issue. *See supra* note 1. In order to recover against defendant Rodgers, Webb must prove that failure to provide the safety devices rendered the product unreasonably dangerous for its intended use. *See Turner v. General Motors Corp.*, 584 S.W.2d 844 (Tex. 1979). This question remains open for the district court on remand.

4. Other points of the *Hopkins* decision have been overruled. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 428 (Tex.1984) (system of "comparative causation"); *Turner v. General Motors Corp.*, 584 S.W.2d 844 (Tex.1979) (jury instruction on "defectively designed").

5. Plaintiff's counsel asked industry expert Gerald Rennell:

Q. Is it also reasonably foreseeable to a manufacturer on a same or similar device, that if it wasn't supplied proper protective devices, they were going to be attempted to be rigged by someone in possession [such] as Mr. Sanders?

A. That and I think that we even foresee that somebody might not even try to do as good a job as Mr. Sanders did; in other words, I've seen worse setups than this on shapers when you leave the responsibility of safeguarding up to the employer.

Record Vol. III at 150.

and substantial modification in design defect.

## 2. Defective Warning

Webb also argues that his (Webb's) theory of defective warning precluded granting defendant Rodgers' motion for a directed verdict. Although the district court in granting the defendant's motion for directed verdict did not mention Webb's theory of defective warning specifically, the district court stated that its ruling on the issue of causation and substantial modification precluded all grounds of recovery. Record Vol. III at 399. Defendant Rodgers similarly argues that it was under no duty to warn of possible consequences from unforeseen modifications by Sanders. Defendant-Appellee's Brief at 16.

While Texas courts hold that a manufacturer's duty to warn extends only to those risks of harm which are either known or foreseeable by the manufacturer, *see Bristol-Myers Co. v. Gonzales*, 561 S.W.2d 801, 803–04 (Tex.1978), testimony at trial indicated that the risk here—injury from wood kickback—was a known and foreseeable risk to shaper manufacturers when the product was being utilized for its intended use of straight-line shaping.[6] Record Vol. III at 97. These experts testified that, in order to minimize this risk of kickback, the manufacturer should have included warnings on the shaper instructing the operator to stand back and/or wear a protective apron during operation. Record Vol. III at 101–02.[7] Alternatively, expert testimony suggested that if the manufacturer's failure to include the functional and safety equipment necessary for straight-line shaping meant that this shaper was not to be used for such purpose, the manufacturer should have attached a warning on the shaper that it was not to be used for straight-line shaping. Record Vol. III at 104. Texas courts rebuttably presume such warnings will be read and heeded. *Technical Chemical Co. v. Jacobs*, 480 S.W.2d 602, 606 (Tex.1972). From this presumption and the testimony in the instant trial, the jury might reasonably conclude that the suggested warnings would have prevented Webb's injury. Record Vol. III at 192. A jury could reasonably conclude that an actionable failure to warn was a producing cause of Webb's injuries, and the district court therefore erred in directing a verdict in favor of the defendant Rodgers on the issue of causation and substantial modification.[8]

## II. SUCCESSOR LIABILITY

As an alternative ground for affirming the district court's judgment, defendant Rodgers contends that it cannot be held liable for defects in the shaper which injured Webb since the shaper in question was manufactured by a proprietorship which operated under the Rodgers name. In the district court, defendant Rodgers argued these same grounds and moved for summary judgment contending that defendant Rodgers could not be held liable under Texas law for the torts of the preceding Rodgers. The district court denied this motion for summary judgment and granted plaintiff Webb's motion to apply California law in determining whether the defendant Rodgers may be held liable for the torts of the Rodgers proprietorship.

---

**6.** Whether Rodgers' failure to attach such a warning to the shaper when it was manufactured rendered the shaper unreasonably dangerous is a question for the district court on remand. This opinion considers only the district court's directed verdict on the ground of causation and substantial modification. *See supra* note 1.

**7.** Although defendant Rodgers argues here that the risk stemmed not from normal shaping operations but from Sanders' modifications, testimony indicated modifications like those performed by Sanders were foreseeable. *See supra* at 1644–1645, 372 & n. 5.

**8.** Webb also appeals the district court's failure to allow him to proceed on his theories of implied warranty and negligent design. We express no comment on these theories since we hold the district court erred in directing a verdict on the issue of causation and substantial modification. This Court has recently explained the distinction between a strict liability action and a negligence action. *See Syrie v. Knoll International*, 748 F.2d 304 (5th Cir.1984).

A proprietorship under the Rodgers name began doing business in 1928.[9] In 1959–60, the production equipment of this proprietorship was sold to Olympic Machinery Co., Inc., a California corporation. From 1960–64, Olympic ran an operating division under the Rodgers name. In 1964, Olympic incorporated Rodgers Machinery Manufacturing Co., Inc. (the present defendant Rodgers), also a California corporation. In 1981, this Rodgers corporation was sold to the Coy Corporation, also a California corporation. According to Otto Seeman, a stockholder of Olympic and director of Rodgers Machinery Manufacturing Co., Inc., the model 5 shaper (which was the model Webb was operating when he was injured) was discontinued prior to Olympic's purchase of the Rodgers production equipment in 1959 and thus would have been manufactured by the Rodgers proprietorship. Webb introduced brochures by the defendant Rodgers corporation advertising that it had been in business since 1928.

■ Defendant Rodgers contends that the district court erred in denying its motion for summary judgment. Defendant Rodgers argues that Texas law applies to this issue and that Texas law would not hold the defendant Rodgers liable. We believe the trial court did not err in ruling that California law should govern this issue. Texas has adopted the "most significant relationship" test of the Restatement (Second) of Conflicts to determine choice of law in tort. *Gutierrez v. Collins*, 583 S.W.2d 312 (Tex.1979). Although Texas law under that test governs many of the substantive issues of this case such as those dealing with the manufacturer's duty, causation, and damages, the Restatement makes clear that choice of law consid-

erations should be viewed "with respect to the particular issue" to be decided. Restatement (Second) of Conflicts § 145.[10] Here, the particular issue to be decided is the liability of a succeeding business entity using the trade name of a previously existing proprietorship. All the contacts with respect to that issue occurred in California. The corporations and proprietorships involved in these transactions were all Californian. Thus, California clearly has the most significant relationship with respect to the particular issue of whether the defendant Rodgers corporation can be held liable for the torts of the preceding Rodgers proprietorship. While California has a significant interest in the governance of these relationships, Texas has few, if any. Thus, the district court did not err in applying California law to this issue. Restatement (Second) of Conflicts § 6.[11]

## III. CONCLUSION

Thus, we conclude that the district court erred in granting the defendant Rodgers' motion for directed verdict on the causation and substantial modification issue. We also conclude that the district court did not err in holding that California governs the successorship question.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

---

**9.** Rodgers was the name of the man who founded the business.

**10.** Stating that Texas and California law governs different issues in this litigation is fully consistent with choice of law principles: "The courts have long recognized that they are not bound to decide all issues under the local law of a single state." Restatement (Second) of Conflicts § 302, comment d.

**11.** We hold only that the district court did not err in *choosing* California law as the law to govern this question. The actual outcome of this issue (i.e., whether defendant Rodgers is liable under California law) is reserved for the district court on remand. *See generally Kline v. Johns-Manville*, 745 F.2d 1217 (9th Cir.1984); Beasley, Successor Liability for Defective Products, 9 ALI–ABA Course Materials J. 113 (1984).