854 F.2d 85
 48 Ed. Law Rep. 780, Prod.Liab.Rep.(CCH)P 11,910
 Billy and Dorothy BOUDREAUX, Individually and on Behalf of
Their Minor Son, Brian Boudreaux, Plaintiffs,
v.
JACK ECKERD CORPORATION, Richard Rosenberg and the Travelers
Insurance Company, Defendants-Third Party
Plaintiffs-Appellants,
v.
TANGIPAHOA PARISH SCHOOL BOARD, and Commercial Union
Insurance Company, Third Party Defendants-Appellees.
 No. 87-3490.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 2, 1988.
Rehearing Denied Sept. 28, 1988.
 
 James J. Morse, New Orleans, La., for defendants-third party plaintiffs-appellants.
 R. Bradley Lewis, Talley, Anthony, Hughes & Knight, Bogalusa, La., for third party defendants-appellees.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before RUBIN, GARZA and JONES, Circuit Judges.
 GARZA, Circuit Judge.
 
 
 1
 This case is on appeal to us from a granting of a directed verdict by the court below. Since the appellants and their insurance company in this case were trying to prove that they had failed to warn a purchaser of their eyeglasses, which in itself is a new twist in the ordinary case, an explanation of the proceedings in the case is necessary.
 
 
 2
 Young Brian Boudreaux and his parents brought a lawsuit against Jack Eckerd Corporation, Richard Rosenberg its salesman and their insurer, the Travelers Insurance Company. Brian Boudreaux and his parents sued for damages arising from injuries received by Brian when a pair of glasses broke severely cutting his right eye and lower lid.
 
 
 3
 * When the injury occurred, Boudreaux was a tenth grade student at Ponchatoula High School in Ponchatoula, Louisiana. On January 19, 1982, Boudreaux was participating in a volleyball game as part of a physical education class when he and a fellow student collided while reaching for a ball hit between them.[1]
 
 
 4
 The eyeglasses were sold by Jack Eckerd Corporation in August of 1980. The eyeglasses were made of glass with metal frames. Boudreaux's eye was cut by the shattered glass lens. Richard Rosenberg, an employee of the Jack Eckerd Corporation, sold the eyeglasses to Boudreaux and his parents.
 
 
 5
 After Boudreaux filed the original suit, Eckerd and Rosenberg filed a third party action against the Tangipahoa Schools. Eckerd and Rosenberg now third party-plaintiffs-appellants settled with Boudreaux and reserved their rights against the Tangipahoa Schools.
 
 
 6
 The court below was advised of the settlement that Eckerd, Rosenberg and Travelers had entered into with Brian and his parents. The court was also informed at a hearing that Eckerd, Rosenberg and Travelers Insurance still had a case against the Tangipahoa Parish School Board and its insurer and that the claim was now solely for contribution. At a conference, the court set the case for trial before a jury and bifurcated the issues to be tried in the following order:
 
 
 7
 1. Question of manufacturer/seller negligence in failure to warn;
 
 
 8
 2. Question of product defect;
 
 
 9
 3. Question of school board negligence; and
 
 
 10
 4. Reasonableness of settlement.
 
 
 11
 A jury was selected to try the issue of whether Eckerd Corporation was negligent because of their failure to warn Brian Boudreaux not to use their eyeglasses in volleyball games. It was necessary for Eckerd to prove that it had been negligent or the settlement they had made with the Boudreauxs would not have given them any right to seek contribution from the Tangipahoa Schools if they, on their part, had also been negligent.
 
 II
 
 12
 In Louisiana, "a manufacturer is required to provide an adequate warning of any danger inherent in the normal use of its product which is not within the knowledge of or obvious to the ordinary user." Bloxom v. Bloxom, 512 So.2d 839, 843 (La.1987) (citations omitted). "Normal use [is] a term of art that includes all intended uses, as well as all foreseeable uses and misuses of the product." Id.
 
 
 13
 The eyeglass manufacturer, Eckerd, does not dispute the issue of "normal use," as Rosenberg acknowledged the eyewear sold to Boudreaux was intended for use in regular activities, including participation in such physical activities as volleyball. Tangipahoa Schools essentially argues Eckerd had no duty to warn Boudreaux of the dangers involved when using the eyeglasses as they were normally intended to be used. Thus, the question here is whether Eckerd/Rosenberg had a duty to warn Boudreaux of any potential risks associated with wearing glasses while playing volleyball, or whether no such duty to warn existed because the potential risks of wearing glasses while playing volleyball are "within the knowledge of or obvious to the ordinary user." The related procedural issue is whether the court properly granted a directed verdict on the factual questions underlying the issue of duty to warn.
 
 
 14
 In Bloxom the court held "[w]hether a particular warning was adequate is a question for the trier of fact." 512 So.2d at 844. This statement does not automatically resolve our case because the statement pertains to adequacy of the warning, not duty to warn. Before examining adequacy, it must be concluded a duty to warn existed. If there exists no duty to warn, adequacy is a moot issue.
 
 
 15
 In many instances, potential risks of using a product in a particular environment may not be "within the knowledge of or obvious to the ordinary user." In other instances, evidence of the obvious nature of the potential risks will at least raise a jury issue. Boudreaux considered it to be a safe practice to participate in volleyball games during his physical education classes, since the glasses sold to him were intended for ordinary wear including physical activities.
 
 
 16
 Rosenberg stated that in the making of eyeglasses, manufacturers may use glass or plastic lenses. If glass is chosen, as in this instance, the manufacturer has treatments available to strengthen the glass material so the danger of using glass is minimized.
 
 
 17
 Rosenberg also testified there was an increased likelihood of danger when placing glass lenses in metal frames and an increased likelihood that glass lenses would break when scratched.
 
 
 18
 During the trial, the attorney for Eckerd asked Brian Boudreaux the following questions and received the following answers.
 
 
 19
 "Q. Did [Rosenberg] tell you that there was any danger from playing sports wearing glasses with metal frames if you got hit?
 
 
 20
 A. No. He just said the frames wouldn't hold it. The frames might bend or they might--one of the arms might fall off or something, nothing about the lenses.
 
 
 21
 Q. Nothing about the lenses shattering--
 
 
 22
 A. No."
 
 
 23
 There is no question that Brian Boudreaux could have believed that his glasses had been sufficiently treated so as to prevent the breaking of the lenses even upon hard impacts.
 
 
 24
 Boudreaux may not have been aware of the exact treatments which were used to coat the lenses, but the jury could decide he was aware Eckerd had done something to his lenses to protect them from shattering.
 
 
 25
 The evidence is clear, however, that Boudreaux was not warned of the increased likelihood of danger when placing glass lenses in metal frames or the increased likelihood that glass lenses would break when scratched as Rosenberg had testified.
 
 III
 
 26
 "In federal diversity cases, a motion for directed verdict should be granted only where the evidence, when viewed in the light most favorable to the party opposing the motion, is such that reasonable persons could arrive only at a verdict in favor of the proponent of the motion." Webb v. Rodgers Machinery Mfg. Co., 750 F.2d 368, 371 (5th Cir.1985). As an appellate court, we sit in the same posture as the district court--the evidence and all reasonable inferences therefrom must be reviewed in the light most favorable to the party against whom the motion is filed. U.S. Industries v. Aetna Casualty & Surety Co., 690 F.2d 459, 463 (5th Cir.1982).
 
 
 27
 When presented with the motion for directed verdict by attorneys for the school board, the trial judge likened the duty to warn Boudreaux about the eyeglasses shattering while playing volleyball to the necessity to warn in a case of the manufacturer of knives telling the purchaser not to put his fingers under the knife or not to stick your fingers in boiling waters when preparing food in plastic containers for eating, or to warn a person not to point a loaded gun at himself when he buys one.
 
 
 28
 The court below took it upon itself to decide that it was not a requirement for a manufacturer or seller of eyeglasses to tell a teenager or anybody "if you wear glasses and get hit while you've got them on, they might break." The trouble was that he was not the trier of fact. He should have allowed the jury to decide this issue from the evidence that had been presented, which we think was sufficient to carry the case to the jury.
 
 
 29
 Therefore, we must reverse this case to let a jury decide whether Eckerd negligently failed to warn Brian Boudreaux of the dangers inherent in wearing his particular glasses while playing volleyball, or whether the danger to Brian Boudreaux was so open and obvious that he knew or should have known of it, in which case the open and obvious danger would have waived the necessity for a warning from Eckerd.
 
 
 30
 This case is another example of not letting a jury decide a question of fact. If the jury in this case had been allowed to decide the issue, they might have agreed with the court and this case would not be here. If the court felt so strongly that they had reached the wrong decision the court below had the option of granting judgment notwithstanding the verdict. Since we have reached the conclusion that there was sufficient evidence to go to the jury we have no alternative but to remand for a new trial.
 
 
 31
 We have received an invitation from the appellants that if we reverse this case and order a new trial that we also order the judge to try all the issues at the same time instead of having the issues bifurcated as explained above. We decline this invitation as the question of bifurcation of issues is one for the lower court to decide and we see no abuse of discretion in the order that was entered in this case on May 22, 1987.
 
 
 32
 REVERSED and REMANDED FOR NEW TRIAL.
 
 
 
 [1]
 There is some dispute between the parties as to the exact manner which the students collided to break the eyeglasses