**Certiorari Denied, No. 31,754, July 22, 2009**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-093**

**Filing Date:  May 15, 2009**

**Docket No.  27,581/28,201**

**MARIA CHAIREZ, Individually and
as Personal Representative of the
ESTATE OF JUAN CHAIREZ,
LEONEL CHAIREZ, MIRNA RAMIREZ,
ROSA ISELA CEBALLOS and ABRAHAM
CHAIREZ,**

        **Plaintiffs-Appellants,**

**v.**

**JAMES HAMILTON CONSTRUCTION
CO., and RC RIBBLE COMPANY/
N.C. RIBBLE CO.,**

        **Defendants-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
William F. Lang, District Judge**

Tucker Law Firm, P.C.
Steven L. Tucker
Santa Fe, NM

Scherr & LeGate, P.L.L.C.
James F. Scherr
Javier Espinoza
Jeffrey B. Pownell
El Paso, TX

for Appellants
Cervantes Law Firm, P.C.
Joseph Cervantes
Las Cruces, NM

1

L. Helen Bennett
Albuquerque, NM
Jeffrey A. Dahl Law Offices, P.C.
Jeffrey A. Dahl
Albuquerque, NM

for Appellee James Hamilton Construction Co.

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Kenneth L. Harrigan
Stan N. Harris
Albuquerque, NM

for Appellee N.C. Ribble Co.

**OPINION**

**FRY, Chief Judge.**

{1}     In this appeal we address a facet of strict liability concerning a manufacturer's liability when, after delivery, a product is altered by the user.  The product involved is a portable rock crushing plant designed by Defendant N.C. Ribble (NCR) and delivered to Defendant Hamilton Construction Company (Hamilton) in 1981.  After the rock crusher was delivered, it was modified, apparently to make it easier for a worker to gain access to the feed box of the machine to clear rock jams or to maintain mechanical parts.  Part of the modification included the removal of a metal shield, which removal exposed a moving flywheel.  Juan Chairez, Plaintiff's decedent and an employee of Hamilton, died after an accident in which his leg was broken by the moving flywheel while he was trying to clear a rock jam.  Mr. Chairez died in the hospital from a blood clot.

{2}     Plaintiff's theory against NCR was that the modifications to the machine were foreseeable and therefore that NCR was strictly liable.  Plaintiff's theory against the employer, Hamilton, was that Hamilton was liable under *Delgado v. Phelps Dodge Chino, Inc.*, 2001-NMSC-034, 131 N.M. 272, 34 P.3d 1148 (holding that conduct by the employer may preclude the employer from relying on the exclusivity of remedy provision of the Workers' Compensation Act).

{3}     The district court granted both Defendants summary judgment, and Plaintiff appeals.  On the strict liability claim against NCR, we adopt the rule that even if a product is substantially altered, a manufacturer may still be strictly liable if those changes were foreseeable.  Applying that rule, we conclude that there are genuine issues of material fact as to foreseeability and reverse the summary judgment in favor of NCR.  We conclude that *Delgado* does not apply and affirm the summary judgment in favor of Hamilton.

2

**BACKGROUND**

**The Portable Rock Crushing Plant**

**{4}**     Chairez was working for Hamilton as part of a crew crushing rocks to be used on road projects.  A rock crushing machine is commonly used to process rock into aggregate for use in highway construction.  The heart of the machine is a jaw crusher.  Around the crusher, Defendant NCR built a portable crushing plant designed to house the machinery of the crusher and deliver rocks to be crushed.  This structure had a chassis and wheels and housed an engine and the crusher machinery.  Above the crusher was a feed box surmounted by a platform that had guardrails with safety chains.  Rocks were dumped into a hopper at the front end of the structure and were fed back to the crusher by a vibrating feeder, which eventually delivered the rocks to the feed box and crusher's jaws.  The platform and guardrail were located 45 inches above the jaw crusher and covered much of the feed box when the machine was operating.  Below the platform, which extended further beyond the rear of the feed box, sat two large flywheels at opposite ends of an axle that were turned by a 325-horsepower diesel engine and that supplied power to the crushing mechanism.

**{5}**     Rocks commonly jam at the throat of the jaw crusher and have to be removed.  Norman Ribble, who designed the machine, described different ways to clear the jams.  While standing on the relative safety of the platform, a worker could use a shovel tooth or a tooth from the bucket of a front-end loader attached to a chain to try to pull or move the offending rocks to alleviate the jam.  Sometimes workers used pry bars or tied a chain around a large rock that was causing a problem and used a loader to help lift it out.  Sometimes a worker stopped the machine and removed rocks by hand.  In this case, there was evidence that the Hamilton crew typically used a tooth attached to a chain and dangled the tooth into the rock jam in an attempt to reorient the rock or rocks or break them, thereby freeing the jam.

**{6}**     Ribble testified that the machine should be turned off when a worker attempts to remove a jam.  He stated that it is up to the customer to decide how to remove the jam because it would depend on the jam and what equipment the customer had available to accomplish the work.  There was evidence that Hamilton trained its crew members (including Chairez) to turn the machine off before attempting to remove a jam but that workers sometimes attempted to remove jams while the machine was operating.  The instruction manual stated that entry into the crushing chamber (feed box and crusher) when the machine was operating could result in extreme injury or death and warned workers not to stand on or above the jaw while it was in operation.

**{7}**     Ribble explained that there is a danger in any crushing plant that cannot be engineered out.  He stated that rock crushers have been a staple of the industry since 1951, and it is common knowledge not to go into the jaw of the machine while it is operating.

3

**Modification of the Crushing Plant**

**{8}** As designed and delivered by NCR, the machine had a platform with guardrails above the feed box. There were two chains that could be removed to gain access to the feed box and jaw crusher. Ribble explained that workers sometimes had to perform maintenance on the machine but that the machine would have to be off when that was done. He also explained that the machine was not designed for anyone to be inside the feed box while the machine was operating. There were no steps or footholds designed inside the feed box because the feed box was designed to create a clear flow of material. It was not designed with maintenance in mind. Anyone who needed to get into the feed box to perform required maintenance would have to "crawl down inside of that box." He testified that "it's not an easy thing to climb into."

**{9}** At some point in the life of the machine it was modified. The fixed floor of the platform had been partially cut away, and a hinged, sliding, removable grate had been added. Below the grate, a step had been added approximately 17 inches below the platform. We refer to this step as the new step or the lower step. Beside the new step is a large flywheel that turns when the machine is operating. When the machine was delivered, the flywheel was completely enclosed and covered by a metal shield. However, the metal shield covering the flywheel was subsequently cut away, leaving the flywheel exposed. Photographs indicate that the step was attached next to the area where the metal shield had been cut away. After this change, the flywheel was partially enclosed, but there was an opening where there was no protection, and a person on the step would be next to the open area in which the flywheel turned. There is no evidence about whether the modifications—the addition of the grate and the lower step and the removal of the metal shield covering the flywheel—were made at the same time or at different times.

**The Accident**

**{10}** On the day of the accident Chairez was in charge of shutting down the machine if there were jams or problems. As part of training Chairez received, he was taught to "lock-out/tag-out," i.e., to turn off the machine before clearing any jams. There was evidence that labels were placed on the machine warning workers not to be inside the machine while it was operating. On the day in question a jam occurred, but Chairez did not turn off the machine. Instead, he climbed into the feed box, knelt on the lower step, and was attempting to clear the jam with his hands by tossing small rocks back up onto a pile. No one was supposed to be on the lower step when the machine was operating. Two of his coworkers, including his supervisor, Mr. Randolph, waved at him to come out of the feed box. One of his coworkers, Mr. Ward, said he thought Chairez was coming out and he (Ward) went to turn off the machine. About that time, Chairez's left leg contacted the flywheel. As a result, his leg broke. He was taken to the hospital for treatment, where he died from a blood clot.

**DISCUSSION**

4

## I.  Strict Liability

## A.  Standard of Review

**{11}** "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. . . .  We review these legal questions de novo." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582 (citation omitted).  "The movant need only make a prima facie showing that he is entitled to summary judgment.  Upon the movant making a prima facie showing, the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Roth v. Thompson*, 113 N.M. 331, 334-35, 825 P.2d 1241, 1244-45 (1992) (citations omitted).

## B.  Modifications to a Product

**{12}** As an initial matter, the parties correctly note that there are no New Mexico cases specifically addressing the liability of a manufacturer for injuries caused by a product that has been modified since the time of its manufacture.  However, there is a jury instruction on the subject, which states:

> In order for a supplier . . . to be liable, the injury must have been caused by a condition of the product which was not substantially changed from the condition in which the . . . supplier placed the product on the market or in which the supplier could have reasonably expected it to be used.
>
> For substantial change in the product to relieve a supplier of liability, the change itself must be a cause of the harm done.

UJI 13-1422 NMRA.

**{13}** The committee comment related to this instruction relies on several New Mexico cases that were decided prior to 1977 and on the *Restatement (Second) of Torts* § 402A(1)(b) (1965), which was itself adopted in 1965.  The language of the instruction tracks the language of the *Restatement*.  This language states that a product supplier cannot be liable for a product that has been substantially changed since the supplier sold the product.  However, comment p to Section 402A expressly addresses this provision and notes that "[t]hus far the decisions applying the rule stated have not gone beyond products which are sold in the condition, or in substantially the same condition, in which they are expected to reach the hands of the ultimate user or consumer." *Restatement (Second) of Torts* § 402A cmt. p.  The comment then goes on to state that

> [i]n the absence of decisions providing a clue to the rules which are likely to develop, the Institute has refrained from taking any position as to the possible

liability of the seller where the product is expected to, and does, undergo further processing or other substantial change after it leaves his hands.

*Id.*

**{14}** Since that comment was first published in 1965, the law of products liability significantly evolved. Some courts concluded that the question of whether a product had been "substantially changed" was one for the fact finder. *See, e.g.*, *Finnegan v. Havir Mfg. Corp.*, 290 A.2d 286, 292 (N.J. 1972) (holding that it was for the jury to determine whether the substitution of an electrical pedal for a mechanical treadle on a power press was a substantial change within the meaning of the *Restatement*'s Section 402A so as to relieve the manufacturer of liability); *Bich v. Gen. Elec. Co.*, 614 P.2d 1323, 1326 (Wash. Ct. App. 1980) (concluding that it was a question of fact for the jury whether the substitution of Westinghouse for General Electric fuses in a transformer constituted a substantial change). Other courts held that the concept of substantial change included a foreseeability component and/or was relevant to the question of causation. *See, e.g.*, *Webb v. Rodgers Mach. Mfg. Co.*, 750 F.2d 368, 372 (5th Cir. 1985) (applying Texas law and holding that the district court erred in directing a verdict in favor of the manufacturer in light of evidence that subsequent modifications to a wood shaper were foreseeable); *Smith v. Verson Allsteel Press Co.*, 393 N.E.2d 598, 604 (Ill. App. Ct. 1979) (concluding that even if a foreseeable modification to a machine contributes to the plaintiff's injury, the manufacturer may still be liable if the modification "is not a superseding or the sole proximate cause of the injury"); *Zacher v. Budd Co.*, 396 N.W.2d 122, 140 (S.D. 1986) (concluding that it was reversible error for the district court to instruct the jury that any substantial change in the product would relieve the supplier of liability; the court should have instructed the jury that only unforeseeable changes that constituted an intervening or superseding cause could preclude liability); *Eck v. Powermatic Houdaille, Div. of Houdaille Indus., Inc.*, 527 A.2d 1012, 1019-20 (Pa. Super. Ct. 1987) (holding that the district court erred in instructing the jury that any substantial change in a product, without regard to foreseeability, would relieve the supplier of liability and that "the issue of substantial change is part and parcel of a causation analysis").

**{15}** Currently, the states take varied approaches to the question of product modification. Some states deal with the issue by statute and others by common law. 1 Louis R. Frumer & Melvin I. Friedman, *Products Liability* § 8.04[7][a][iv] (2007). However, there is substantial authority for the rule that a manufacturer may be liable if the subsequent modification was reasonably foreseeable. *See id.* § 8.04[7][e]. "Most states will not absolve a manufacturer or seller from liability as the result of an alteration or modification that was reasonably foreseeable[.]" *Id.*

**{16}** By contrast, some states make alteration or modification a complete defense, and there is no exception for foreseeable modifications. *Id.* note 290, § 8.04[7][a][ii]. In New York, manufacturers are not strictly liable after a modification has been made, even if the modification was foreseeable. *Robinson v. Reed-Prentice Div. of Package Mach. Co.*, 49 N.Y.2d 471, 481 (N.Y. 1980) ("Material alterations at the hands of a third party which work

6

a substantial change in the condition in which the product was sold by destroying the functional utility of a key safety feature, however foreseeable that modification may have been, are not within the ambit of a manufacturer's responsibility."); 1 Frumer et al., *supra*, § 8.04[7][f]. In some states, the issue is considered part of the state's comparative fault scheme. 1 Frumer et al., *supra* note 291, § 8.04[7][a][ii].

**{17}** Case law in New Mexico suggests that we should follow the weight of authority and hold that a manufacturer or seller of a product may be held liable after a substantial modification of the product if the modification was reasonably foreseeable. This is consistent with existing New Mexico law concerning the misuse of a product. We have held that "[a] supplier has the duty to consider foreseeable risks of injury. This duty is limited to use of the product for a purpose *or in a manner which could reasonably be foreseen.*" *Van de Valde v. Volvo of Am. Corp.*, 106 N.M. 457, 458, 744 P.2d 930, 931 (Ct. App. 1987) (emphasis added) (internal quotation marks and citation omitted). Thus, it is established New Mexico law that a consumer's misuse of a product does not shield the supplier from liability if the misuse is reasonably foreseeable to the supplier. *Cf.* UJI 13-1403 NMRA (stating that where misuse of a product that was not reasonably foreseeable to the supplier causes an injury, the supplier is not liable). The law views misuse of a product and modification of a product as similar concepts. For example, the *Restatement (Third) of Torts: Products Liability* § 2 (1998), groups misuse and modification together. *See id.* cmt. p (noting that "misuse, modification, and alteration are not discrete legal issues[, but r]ather, when relevant, they are aspects of the concepts of defect, causation, and plaintiff's fault"). Consequently, incorporating the notion of foreseeability into the assessment of product modification makes sense. We therefore conclude that NCR could conceivably be liable if the modifications to the rock crushing plant were reasonably foreseeable to NCR.

## C.    Foreseeability

**{18}** Plaintiffs argue that there are genuine issues of material fact about whether NCR could foresee that alterations to the crusher would be made to allow easier access to clear jams and to perform maintenance. NCR, on the other hand, argues that the cause of the accident was the removal of the protective shield covering the flywheel, that this change had nothing to do with gaining easier access, and that NCR could not foresee that anyone would remove a solid metal shield covering a moving flywheel.

**{19}** The evidence supports the inference that the additional grate and step were added to improve access to the feed box to clear rock jams or to perform routine maintenance because, as Ribble himself testified, the box was "not an easy thing to climb into." Although it is unclear why the metal shield covering the flywheel was removed, the photographic evidence suggests that the shield may have been removed to create a place to attach one side of the new step. NCR argues that the accident could not have happened without the removal of the shield and that it was this modification that caused the accident. NCR argues that no reasonable person could foresee that a metal shield covering a flywheel would be removed.

7

We are not persuaded that the unforeseeability of removing the metal shield can be determined as a matter of law.

{20}     While it is true that the accident would not have happened if the flywheel had been covered, NCR's view of causation is too narrow.  It is also true that the accident would not have happened if there had been no lower step that placed Chairez next to the unprotected flywheel.  The addition of a step to more easily access the feed box for maintenance or to clear rock jams may be objectively and reasonably foreseeable.  While it is true that these alterations providing easier access allowed Chairez closer proximity to the exposed flywheel, we disagree with NCR that the focus is only on the metal covering that was removed.  The new grate and the new step also played a role in the accident.  Defense counsel apparently acknowledged this in the district court when he observed that the changes

> created an inviting place for somebody to step down onto . . . this step to gain access to the area of jaw pressure, and it created a situation where somebody [who] was on that step . . . would be on a location where there would be no physical protection from being struck by the rotating flywheel.

{21}     Viewing the evidence from a broader perspective, there are two distinct views  of foreseeability.  On one hand, NCR conceded that rock jams are common, that maintenance of the machine is required, and that the feed box was difficult to access.  Thus, Plaintiff argues, it should be anticipated that the machine might be altered to make it easier to clear jams or to perform maintenance.  On the other hand, NCR contends that it would be objectively unreasonable to anticipate that anyone would modify the machine to get closer to a rock crushing jaw, especially if the intention was to do so while the machine was running.  We cannot say that either view is eminently more reasonable than the other.  Because reasonable minds can differ on this issue, it is for the jury to determine these factual questions concerning the nature of the modifications, their relationship to each other, causation, and foreseeablity.  *See Hiner v. Deere & Co.*, 340 F.3d 1190, 1198, 1200 (10th Cir. 2003) (holding that the foreseeability of welding bale-fork attachments to bucket of front-end loader was a question of fact); *Thompson v. Package Mach. Co.*, 99 Cal. Rptr. 281, 286 (Cal. Dist. Ct. App. 1971) (holding that foreseeability of an alteration is a jury issue); *Foster v. Devilbiss Co.*, 529 N.E.2d 581, 584 (Ill. App. Ct. 1988) (holding that where the trigger guard on a spray nozzle was removed because the nozzle was difficult to operate wearing gloves and the nozzle guards were removed because the nozzle tended to clog, the jury could determine that removal of the guards was foreseeable); *Medina v. Air-Mite Devices, Inc.*, 515 N.E.2d 770, 773-74 (Ill. App. Ct. 1987) (holding that where reasonable minds could differ about whether the modification to the product was foreseeable, summary judgment was inappropriate); *Schooley v. Ingersoll Rand, Inc.*, 631 N.E.2d 932, 938 (Ind. Ct. App. 1994) (holding that whether substantial alteration of a hoist hook was reasonably foreseeable was a jury question); *Handmaker v. Henney*, 1999-NMSC-043, ¶ 18, 128 N.M. 328, 992 P.2d 879 (stating that in reviewing summary judgment, we view the facts in the light most favorable to the party opposing summary judgment and draw all reasonable inferences in favor of a trial on the merits); *Wood v. Angel Fire Ski Corp.*, 108 N.M. 453,

458, 774 P.2d 447, 452 (Ct. App. 1989) (stating that where reasonable minds can differ on the issue of proximate cause, summary judgment is not proper).

{22}    Our conclusion is consistent with New Mexico cases that have held that the jury should decide similar issues arising in the products liability context. *See Fernandez v. Ford Motor Co.*, 118 N.M. 100, 112, 879 P.2d 101, 113 (Ct. App. 1994) (stating that whether a product is unreasonably dangerous as manufactured without a safety device created a genuine issue of material fact requiring resolution by the jury); *Salinas v. John Deere Co.*, 103 N.M. 336, 341, 707 P.2d 27, 32 (Ct. App. 1984) (stating that whether a product is unreasonably dangerous is ordinarily a jury question); *Michael v. Warner/Chilcott*, 91 N.M. 651, 653-55, 579 P.2d 183, 185-87 (Ct. App. 1978) (holding that the adequacy of warning was a question of fact for the jury); *Deem v. Woodbine Mfg. Co.*, 89 N.M. 50, 57-59, 546 P.2d 1207, 1214-16 (Ct. App. 1976) (holding that the foreseeability of a child using the product was a question of fact), *rev'd on other grounds by Woodbine Mfg. Co. v. Deem*, 89 N.M. 172, 548 P.2d 452 (1976); *First Nat'l Bank in Albuquerque v. Nor-Am Agric. Prods., Inc.*, 88 N.M. 74, 83, 537 P.2d 682, 691 (Ct. App. 1975) (holding that the adequacy of warning and whether the product was unreasonably dangerous were questions of fact for the jury). *But see Van de Valde*, 106 N.M. at 458, 744 P.2d at 931 (holding that while foreseeability of misuse of a product by a consumer is ordinarily a fact question, the court may decide as a matter of law whether the use to which the product was put was so unintended and unforeseeable that the case may be decided on summary judgment).

{23}    NCR and the dissent rely on *Van de Valde* to argue that the modification of the machine was not foreseeable as a matter of law. We are not persuaded. *Van de Valde* involved a plaintiff using a spare tire retention strap to hold curtain rods in place on a car's roof rack. 106 N.M. at 457-58, 744 P.2d at 930-31. The court in *Van de Valde* affirmed summary judgment in favor of the strap manufacturer because the plaintiff's use of the strap was unforeseeable as a matter of law. *Id.* at 460, 744 P.2d at 933. The use of the strap to secure curtain rods was entirely foreign to the strap's intended use to retain a spare tire. Here, the modifications to the machine were conceivably in furtherance of the use of the machine as a rock crushing mechanism and were apparently made to facilitate the routine maintenance of the machine and the clearing of rock jams, which are an inevitable occurrence during the use of such machines. This is in contrast to the completely unrelated use of the spare tire retention strap to secure objects to a roof rack in *Van de Valde*.

{24}    NCR also relies on cases from other jurisdictions holding that the removal of a safety guard is unforeseeable as a matter of law. We first observe that it is questionable whether the metal shield covering the flywheel should be considered a safety guard. The shield was apparently a solid sheet of metal covering a moving part. Machines commonly have moving parts covered by metal, and we are unwilling to conclude that the metal shield was a safety device or that the removal of metal overlying a moving part will always equate with the removal of a safety guard. Additionally, to the extent there is an issue in this case or in any future case about the removal of a safety device, whether the removal of a safety device is reasonably foreseeable will depend on the facts in the particular case, and we do not believe

9

it should be subject to an automatic rule.  *See, e.g., Foster*, 529 N.E.2d at 584 (holding that the foreseeability of the removal of guards was a fact question).

**{25}**    NCR also argues that Ribble himself did not foresee the modifications that would allow a person closer access to the jaw crusher or that would uncover the flywheel, but we do not view this as dispositive.  *See* 1 Frumer et al., *supra*, § 8.04[7][e] (stating that the test is whether the modifications were objectively and reasonably foreseeable).  The jury may weigh his testimony, but it is free to reach its own conclusion.  *See Chavira v. Carnahan*, 77 N.M. 467, 469, 423 P.2d 988, 990 (1967) (stating that the jury weighs the evidence).

**{26}**    In our view, the question of foreseeability of the modifications is particularly suited to the jury's consideration because it is a question that, depending on the case, may encompass three issues that are classic fact issues:  the existence of a defect in the product, legal cause, and comparative fault.  *See Restatement (Third) of Torts:  Products Liability* § 17 cmt. a (1998) (noting that misuse, modification, and alteration "relate to one of three issues in a products liability action:"  defect, causation, and contributory fault).  For example, in the present case, NCR may argue at trial that it was the modifications to the machine—no matter how foreseeable—and not the machine's alleged defective design (i.e., the design's failure to permit easy rock-clearing and maintenance) that caused Chairez's injury.  NCR may also argue that even if the modifications were foreseeable, it was Chairez's negligence in approaching the operating mechanism that resulted in his injury.  Thus, our decision today in no way assures Plaintiff of a successful outcome at trial.  Instead, our decision simply refuses to draw a line determining that the modifications here were unforeseeable as a matter of law.

**{27}**    In reaching our holding that foreseeability presents a genuine issue of material fact, we emphasize that we are not expressing a blanket rule that summary judgment will never be appropriate in this context.  Cases dealing with the effect of a subsequent modification arise in many different factual scenarios, and courts have reached different results.  *See* Frederick E. Felder, J.D., Annotation, *Products Liability:  Alteration Of Product After It Leaves Hands Of Manufacturer Or Seller as Affecting Liability for Product-Caused Harm*, 41 A.L.R.3d 1251, § 3 (1972).  Each case must be considered on its own merits.

**{28}**    For all of these reasons, we conclude that a manufacturer or seller may be strictly liable for substantial changes and alterations that are reasonably foreseeable.  We also conclude that under the facts in this case, foreseeability presents a genuine issue of material fact, and we reverse the summary judgment in favor of NCR.

## II.    *Delgado*

**{29}**    Because Chairez was employed by Hamilton, his estate's sole remedy against Hamilton is workers' compensation unless the estate can establish a *Delgado* claim.  *Delgado* holds that an employee's sole remedy is not workers' compensation if:  (1) he or she can establish that the employer engaged in an intentional act or omission without just

10

cause that is reasonably expected to result in the injury to the worker; (2) the employer expected the intentional act or omission to result in the injury; and (3) the intentional act or omission proximately caused the injury. *See Delgado,* 2001-NMSC-034, ¶ 26. The district court, noting that *Delgado* is a "very, very narrow exception," concluded that Plaintiff did not establish the existence of a genuine issue on this claim. We agree.

**{30}** The burden to establish a *Delgado* claim is high. It requires intentional infliction of or willfully causing an injury. *Id.* ¶ 24. Negligence is not enough. *Id.* ¶ 30. In *Morales v. Reynolds*, 2004-NMCA-098, ¶ 10, 136 N.M. 280, 97 P.3d 612, we observed that *Delgado* stemmed from "egregious employer conduct: a combination of deadly conditions, profit-motivated disregard for easily implemented safety measures, complete lack of worker training or preparation, and outright denial of assistance to a worker in a terrifying situation." *Id. Delgado* addressed a situation involving deliberate or intentional acts that the employer knew or should have known would almost certainly result in serious injury or death. *Id.* ¶ 9. In order to recover on a *Delgado* claim, a worker must establish that the employer's conduct was unconscionable, *id.* ¶ 10, and that it "exemplif[ied] a comparable degree of egregiousness" as that in *Delgado. Id.* ¶ 14.

**{31}** Plaintiff argues that it established an issue of fact as to whether Hamilton engaged in an intentional act that it reasonably expected to result in injury to Chairez by removing the metal cover protecting the flywheel. We do not agree. Even if Hamilton intentionally removed the metal shielding the flywheel, Plaintiff did not present any evidence suggesting that Hamilton intended Chairez to be in a position where he would be exposed to the flywheel while the flywheel was in operation.

**{32}** There is no evidence here that anyone associated with Hamilton ordered Chairez to enter the feed box of the machine to clear a rock jam with his hands. Additionally, Chairez was the person specifically designated to turn off the machine prior to attempts to clear any jams, yet he chose not to turn off the machine. Turning off the machine, as Hamilton had trained him to do, would have removed virtually all danger. There is evidence that two of Chairez's coworkers, including his foreman, told him to come out of the feed box. The record is devoid of any evidence that anyone affiliated with Hamilton required Chairez to go down to the step and remove rocks by hand while the crusher was operating. Consequently, unlike the situation in *Delgado*, where the employer ordered the worker into a molten inferno despite the worker's protestations, 2001-NMSC-034, ¶¶ 4-5, it was Chairez's own choice and conduct that placed him in harm's way.

**{33}** We further conclude that the gravity of the harm and the certainty of injury in the present case does not approach the level required by *Delgado. See Morales,* 2004-NMCA-098, ¶ 29 (concluding that *Delgado* did not apply where the employer's acts and omissions "did not approach the certainty or egregiousness of the employer in *Delgado.*") Accepting Plaintiff's evidence that attempting to clear jams while the machine was operating was a "common practice," the evidence established only that sometimes workers would drop the tooth from the upper platform while the machine was on. This was not the practice that

resulted in Chairez's injury. In addition, evidence that it was common practice for workers to remove jams while the machine was running suggests that it was normally performed without incident. *See id.* ¶ 23 (observing that evidence that the worker had performed the same task before without injury weighed against worker's *Delgado* claim). Plaintiff has not pointed to any evidence that it was common practice for workers to try to clear jams from the lower step while the machine was running. Nor has Plaintiff introduced any evidence that it was common practice for anyone to kneel on the lower step and attempt to remove rocks by hand. We conclude that, as a matter of law, Plaintiff failed to introduce evidence that Hamilton engaged in intentional conduct that resulted in injury to Chairez.

**{34}** Finally, Plaintiff appears to argue that the *Delgado* standard is unconstitutionally vague because it imposes on plaintiffs the burden of proving an employer's subjective state of mind. We are not persuaded. The void-for-vagueness doctrine applies to statutes and administrative regulations. *See Old Abe Co. v. N.M. Mining Comm'n*, 121 N.M. 83, 91-93, 908 P.2d 776, 784-86 (Ct. App. 1995) (discussing the doctrine as applying to legislative or administrative enactments). We are unaware of any authority, and Plaintiff has not cited any, holding that a standard adopted by an appellate court is invalid because it is unconstitutionally vague. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (stating that an appellate court will not consider an issue if no authority is cited in support of the issue). Furthermore, *Delgado's* standard was adopted by our Supreme Court. It is not appropriate for us to overturn that standard. *See Alexander v. Delgado*, 84 N.M. 717, 718, 507 P.2d 778, 779 (1973).

### III.  Dual Persona Doctrine

**{35}** Plaintiff briefly argues that Hamilton should be held liable under the dual persona doctrine. *See Salswedel v. Enerpharm, Ltd.*, 107 N.M. 728, 731, 764 P.2d 499, 502 (Ct. App. 1988) (stating that an employer may become a third person, vulnerable to a tort suit by an employee, if it possesses a second persona completely independent from and unrelated to its status as an employer). Plaintiff argues that when Hamilton modified the machine, it wore a second hat as an equipment manufacturer and should be held liable outside the workers' compensation system of immunity. We are not persuaded that if an employer modifies a piece of construction equipment, the employer then takes on a separate persona as an equipment manufacturer, thereby losing its protection under the Workers' Compensation Act. *See* 6 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 113.03 (2007) (stating that, in the context of the dual persona doctrine, "[i]t is now held with virtual unanimity that an employer, who is also the manufacturer, modifier, installer, or distributor of a product used in the work, cannot be held liable in damages to its own employee on a theory of products liability").

### CONCLUSION

**{36}** For the foregoing reasons, we reverse the summary judgment in favor of NCR. We affirm the summary judgment in favor of Hamilton Construction.

**{37}** **IT IS SO ORDERED.**

_____

**CYNTHIA A. FRY, Chief Judge**

**I CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

**RODERICK T. KENNEDY, Judge (concurring in part, dissenting in part)**.

**KENNEDY, Judge (concurring in part, dissenting in part)**.

**{38}** NCR's unaltered design of the 22-year-old crushing plant would have prevented Chairez's injury. The alteration critical to causing the injury—removing the plate steel "shield" separating the feed hopper of the crusher from the area where the flywheels rotated—serves no purpose that has been described in the evidence (or by the majority). Second, by emphasizing the foreseeability of the alterations, the majority has de-emphasized the other required element for imposing strict liability—whether the product's use was foreseeable. I would affirm the district court's order granting summary judgment to NCR. If we look at the facts in an objective and reasonable manner as required by the law, there is simply no genuine issue of material fact concerning whether NCR could have reasonably foreseen either the critical modifications which caused Chairez's injuries or the risk that would be caused by those modifications in conjunction with Chairez's own unreasonable use of the rock crusher. To ask such foresight of a manufacturer defies reason and is the functional equivalent of requiring the use of a crystal ball. Momentarily casting discussion of necromancy aside, both the undisputed facts of this case and our case law demand we affirm.

**The Facts: An Introduction**

**{39}** No dispute exists that NCR constructed and delivered a portable rock crushing plant that had a complete platform over the feed box, and was not designed to have persons in the area of the crushing mechanism when the plant was operating. No dispute exists over the fact that Chairez was trained not to enter the crushing mechanism when the machine was operating. Someone other than NCR made three modifications of note between the plant's sale and delivery by NCR in 1981 and the accident in 2003: (a) the solid platform above the hopper had been modified by cutting out part of it and replacing it with a hinged/sliding piece to facilitate entry into the hopper; (b) a step that ran the roughly 4-foot width of the hopper extending about 10.5 inches into the hopper was added some 17 inches below the hopper's rim; and (c) metal plating between the hopper and an area behind it that contained

13

two gigantic flywheels that provided power to the crushing mechanism was removed, exposing the flywheels within inches of either end of that step.

**{40}**     Evidence shows that rocks sometimes jammed in the crusher, requiring action by operators to move or remove them to permit further operation and that NCR knew that.  Mr. Randolph, whose testimony the majority mentions in stating that workers tried to clear jams when the plant was operating, specifically testified that workers "never" went into the hopper, but stood on the top platform to try to clear jams.   Michael Ward, another worker present at the time of the accident, said he had never before seen anyone try to unblock a jam when the machine was running.  Modifications (a) and (b) above specifically facilitate that process.  No evidence explains the removal of the barrier between the back of the step and the flywheels.  Chairez's training specifically directed him never to enter the feed hopper when the plant was running.  At least one of Chairez's fellow employees told him to come up out of the machine immediately prior to his injury.  No one testified that they ever expected him to go down into the machine when it was running until he had done it.

**The Law:  An Introduction**

**{41}**     This Court has previously held that a manufacturer is liable only to "those individuals to whom injury from a defective product may reasonably be foreseen *and only* those situations where the product is being used for the purpose for which it was intended or for which it was reasonably foreseeable it [would] . . . be used."  *Van de Valde,* 106 N.M. at 459-60, 744 P.2d at 932-33 (emphasis added) (internal quotation marks and citation omitted).  These precepts are codified in UJI 13-1402 NMRA, which provides that "[t]he supplier of a product has a duty to use ordinary care to avoid a foreseeable risk of injury caused by a condition of the product or manner in which it is used."  This duty continues after the product has left the supplier's possession, and thus "[a] supplier who later learns, or in the exercise of ordinary care should know, of a risk of injury caused by a condition of the product or manner in which it could be used[,] must then use ordinary care to avoid the risk."  *Id.*  This duty is in turn limited by UJI 13-1403 NMRA, which states that although a supplier has the duty to consider foreseeable risks of injury, "[w]here an injury is caused by a [risk] [or] [misuse of the product] which was not reasonably foreseeable to the supplier, . . . [the supplier] is not liable."  To impose liability, then, requires a manufacturer to foresee the risk of injury from the condition of the product, including likely modifications, and the risk of injury that attends foreseeable uses or misuses of the product.  Both parties cite UJI 13-1422 NMRA, which discusses product modification.  That instruction states:


> In order for a supplier [a particular supplier who was in the chain of marketing the product] to be liable, the injury must have been caused by a condition of the product which was not substantially changed from the condition in which the [particular] supplier placed the product on the market or in which the supplier could have reasonably expected it to be used.

> For substantial change in the product to relieve a supplier of liability, the change itself must be a cause of the harm done.

**{42}** This statement of New Mexico law[1] appears to significantly limit a manufacturer's exposure to liability when substantial changes to the product cause the risk of harm. It distinguishes between the condition of the product as sold and the condition in which the manufacturer could reasonably expect it to be used, including any reasonably anticipated modifications to it. The next question therefore becomes whether, if the condition of the product has been substantially changed, the manufacturer could have reasonably expected its product to have been used in the way that caused the injury. "Misuse is use of a product for a purpose neither intended nor foreseeable by the manufacturer or supplier." *Austin v. Lincoln Equip. Assocs., Inc.*, 888 F.2d 934, 938 (1st Cir. 1989). This Court has previously recognized that some uses are "so unforeseeable that the matter can be taken [away] from the jury." *Smith v. Bryco Arms*, 2001-NMCA-090, ¶ 17, 131 N.M. 87, 33 P.3d 638.

**Modified Products Require a Different Analysis**

**{43}** Thus, imposing liability on a manufacturer for a product modified after its sale involves three assessments. First, the modification or alteration must have been foreseeable to the manufacturer; second, the product, as modified, must have been likely to cause harm; and third, the particular harmful use of the modified product must have been foreseeable as well. The parties agree that NCR had nothing to do with the modifications themselves.[2] It is also beyond dispute that but for these modifications, particularly opening access to the flywheels, Chairez would not have been injured.

---

[1] *See State v. Wilson*, 116 N.M. 793, 795-96, 867 P.2d 1175, 1177-78 (1994) (holding that adoption of a uniform jury instruction by the New Mexico Supreme Court establishes a presumption that instruction is a correct statement of law).

[2] For purposes of context, at the edge of either side of the hole created by the removal of the solid metal "shield" turned a flywheel about 6-feet in diameter, judging by photographs in evidence. A flywheel is an energy storage device for rotational energy—think about how long a toy gyroscope spins with one pull of its string—that can release steady energy to do work. After shutting down the motor on this machine, the wheels would spin for another five minutes; this is the period during which Chairez's leg was broken. These flywheels provide constant power to the jaws of the crusher. The ledge built in front of the hole in which these wheels turned was little more than a hand's breadth wide and 4 feet long. Nothing obstructed the space between the end of the platform and the moving flywheel; the platform's edge was entirely within the circumference of the wheel. Chairez knelt on the ledge leaning into the crusher feed box; where was the other half of his leg and foot?

**{44}** The Majority attempts to raise the bar to require the modification to be the "sole proximate cause" of the injury, Majority Opinion ¶12, but even with the bar set this high, it is plain that but for exposing the flywheels by removing the plate steel barrier separating them from the hopper, Chairez would not have been exposed to the agent of his injury. Again, however, foreseeability of that modification and its role in causation, must also exist with a use of the product that was foreseeable to NCR. The majority implies that Chairez's use of the machine was foreseeable; I believe otherwise enough to be comfortable saying it was unforeseeable as a matter of law.

**{45}** In this case, removing rock jams from the vantage of the upper platform was both foreseeable and common. The removal of the barrier to the flywheels was not related to the crusher's intended use. It was, along with Chairez's own unreasonable conduct, the cause of his injury.

**{46}** The majority, despite having viewed "the photographic evidence" through their crystal, confess that it is unclear why the metal barrier was removed. The record itself offers no explanation. Majority Opinion ¶ 17. Without an objectively discernable reason for a modification of the product and a further inability to divine the reason for the modification on the part of the end-user, applying the Majority's analytical standard negates foreseeability entirely and allows a determination of the issue as a matter of law. The majority reasonably adopt the Plaintiff's argument below—that adding the step might invite stepping on it but NCR did not add the step, and no evidence suggests that removal of the shield between the step, and the crusher's largest moving parts was *ever* foreseeable. Had the shield been in place, not only would Chairez's leg not have been in a place to be broken, but any use of the narrow step while the crusher was running would have been far more difficult. Thus, foreseeing use of the step by a worker down on all fours removing rocks from the hopper by hand—and therefore placing his legs in an area of great danger while the plant is operating—approaches objective inconceivability. To hold otherwise would be to require manufacturers to design products for irrational and unreasonable end users, and our laws are not designed to protect the irrational and unreasonable from their own artifice. Indeed, this Court has held that manufacturers are not the "insurers of any and all risks attendant to the use of their product." *Van de Valde*, 106 N.M. at 459, 744 P.2d at 932. The district court ruled correctly.

**Chairez's "Use" of the Crusher**

**{47}** But absent foresight of the modification itself, we should consider the use of the crusher in this case. Chairez climbed up two ladders and over a guardrail with two barrier chains to the top platform, on which he opened a hatch. He then climbed through the hatch to occupy the 10-inch wide ledge below it, and got down on all fours on this narrow ledge in an attempt to knock rocks *by hand* out of the powered and moving jaws below him. As he did this, he necessarily extended his leg behind him, through the opening left by removing the "shield," toward an enormous wheel that was, in turn, spun by a 325-horsepower engine, until the wheel caught his foot and broke his leg. The photographic evidence shows no gap

16

from the edge of the ledge to the edge of the wheel. Saying that this use was foreseeable seems to consist of creating a simplistic and false legal inference that: (a) where a machine incorporates large and dangerous moving parts, (b) some user will inevitably modify it in order to more easily insert body parts into one of its most powerful and dangerous areas when it is running. One is not required to "guard against eventualities which at best are too remote to be reasonably foreseeable." *Noebel v. Hous. Auth. of City of New Haven*, 148 A.2d 766, 769 (Conn. 1959). For us, foreseeability must involve the reasonable limits of foresight, not the untrammeled application of hindsight.

**{48}** Clearing rock jams when the machine is running happens, but only from the top platform. Clearing jams from inside the feed hopper when the crusher is running was unknown. Either way, clearing jams is not shown by the evidence to have anything to do with exposing the flywheels. An inference that removing the "shield" was a foreseeable modification in 1981 and that exposing one's self to the flywheels when they were moving was a foreseeable use in 2003 employs only the foreseeability of hindsight. The majority illogically give equal weight to Plaintiff's generalized view that jams are common and might need to be cleared with the help of alterations to the machine and NCR's more specific view that it was unreasonable to anticipate a modification to the machine so as to allow easier access to the flywheels when the machine was running. Majority Opinion, ¶ 19. These propositions are not of equal weight. NCR should not anticipate exposure of workers to spinning flywheels without a showing that there was a reason to do so. While it might reasonably expect that jams need to be cleared, modifications that facilitate the process while the machine is running and expose workers to moving parts is beyond the limits of reasonable anticipation. Misuse of the plant by climbing into a place made even more dangerous by another's modification and yet more so when the plant was still running is something an objective observer could fairly regard as inconceivable.

### *Van de Valde* **and the Voice of Objective Reasonableness**

**{49}** Against this miasma of supposition rests our decision in *Van de Valde*, which provides an instructive framework for this case. The plaintiff there was injured after he secured objects to the roof of a Volvo with a strap from the car that was designed only to secure the vehicle's spare tire inside the tire well. *Van de Valde*, 106 N.M. at 457, 744 P.2d at 930. He sought damages against the manufacturer, among other defendants, and argued that it was foreseeable that operators would use such straps to secure not only the tire inside the tire well, but also to secure other items to the roof of the car. The district court granted summary judgment to the manufacturer on the basis that such a use was not foreseeable. Plaintiff then appealed to this Court. *Id.* at 457-58, 744 P.2d at 930-31. This Court affirmed the order of summary judgment, holding that the use of the tire strap to secure objects to the top of the car was not "objectively foreseeable." *Id.* at 459-60, 744 P.2d at 932-33. *Van de Valde* asked, "[w]hile it is conceivable that plaintiff . . . might use the tire restraining strap to stretch across a surface wider than the strap itself, would it not be just as conceivable that someone might attempt to use it to lower a thousand-pound motor into a truck?" *Id.* at 459, 744 P.2d at 932. Either way, the opinion held, the strap would fail. This Court concluded

17

that to expand foreseeability to extreme uses outside a product's common function and design went too far. The analysis comes down, not to whether the use was simply foreseeable, but to whether the use was "objectively foreseeable." *Id.*

**{50}** In reaching the holding in *Van de Valde*, this Court adopted the opinion of the Illinois Court of Appeals in *Mata v. Clark Equipment Co.*, 374 N.E.2d 763 (Ill. App. Ct. 1978), which parallels the issues in this case. In *Mata*, a warehouse employee was injured when he stood up on a forklift to dislodge a bag of walnuts stuck between the forklift and a wall while the truck was still in motion. The bag fell on him and injured him. The employee was able to stand up on the forklift only because the forklift's overhead protective guard, designed and installed by the manufacturer, had been removed by his employer. *Van de Valde*, 106 N.M. at 458-59, 744 P.2d at 931-32. This court adopted the holding of the Illinois court which affirmed an order of summary judgment for the manufacturer, because although removal of the forklift's overhead cover was certainly *foreseeable*, it was not "objectively reasonable." *Id.* In so holding, the *Mata* court stated, "almost nothing is entirely unforeseeable. A test of foreseeability, however, does not bring within the scope of a defendant's liability every injury that might possibly occur." *Id.* at 459, 744 P.2d at 932 (internal quotation marks and citation omitted). We should not depart from *Mata or Van de Valde* today. Foreseeability is "that which is objectively reasonable to expect, not merely what might conceivably occur." *Id.* (emphasis, internal quotation marks and citation omitted); *see Smith*, 2001-NMCA-090, ¶ 17 (holding foreseeability was properly a jury question where the record showed that an intentionally designed characteristic of a pistol was a contributing cause of plaintiff's injury and that plaintiff's dangerous use was therefore objectively foreseeable).

**{51}** Objectivity is the key. As Judge Alarid urged in *Madsen v. Scott*, 1998-NMCA-092, ¶ 42, 125 N.M. 475, 963 P.2d 552 (Alarid, J., dissenting), "the 'foreseeability' element of proximate cause is established by proof that actor, as [a] person of ordinary intelligence and prudence, should reasonably have anticipated [the] danger to others created by his negligent act. That which is *objectively reasonable* to expect, not merely what might conceivably occur." (emphasis added) (citation omitted), *rev'd* 1999-NMSC-042, ¶ 18, 128 N.M. 255, 992 P.2d 268.

**{52}** In the instant case, for example, we might ask whether it was objectively reasonable to expect that someone would remove the steel barrier between the rock crusher's hopper and flywheels. There is no dispute that NCR designed the barrier to prevent exposure of the flywheels while they continued to turn. I do not view the removal of such a barrier as foreseeable and believe that such a removal cannot be said to qualify as objectively reasonable, as required by the holding in *Van de Valde*. Similarly, it *might* be foreseeable that users would construct a ledge or step to enable workers' closer access to jammed material; but it does not seem prudent to require NCR to foresee such a use while the flywheels continue to spin and the crusher operates, especially in view of the narrowness of the after-market step and *especially* after the flywheels have been completely exposed.

18

**{53}** The last requirement I wish to discuss from *Van de Valde* is the application of strict liability in "only those" instances where the product is used for the purpose it was intended. I would maintain that Chairez's use went far beyond the pale of intended use of the rock crusher, just as removing the "shield" went beyond the pale of foreseeable modification of it. Facilitating one reasonable use (clearing jams) is not cause for buying wholesale into all possible uses (climbing into a gigantic running machine next to huge moving parts to clear jams against all manufacturer's and co-workers' warnings, industry and company practices, training, and all common sense). Chairez was schooled and experienced in the operation of this rock crusher. He climbed onto a narrow ledge that was open on one side to the crushing jaws of the machine, and on the other, toward two moving wheels of great size and weight. He was an experienced operator exposing himself to an obvious and visible hazard, and as he knelt on the 10-inch wide ledge, had to have a sense as to what a sizeable portion of his lower leg, including his foot, was extending toward. I believe that the law would fairly deem Chairez to know of the dangers attendant to his actions. *See, e.g., Mata*, 374 N.E.2d at 767 (holding that an experienced forklift operator was injured while standing on the seat of a moving forklift modified by removing the overhead guard and was aware of the danger that was unforeseeable as a matter of law to the manufacturer).

**{54}** As the majority now requires manufacturers to foresee such inherently dangerous and unreasonable uses, they require NCR to foresee an employee's attempt to manually remove jammed material from down in the hopper while the crushers continue to bind, sputter, and choke under the tension of a jam. NCR had never heard of it. Hamilton's two workers, both familiar with clearing jams, had never seen such a maneuver until Chairez attempted it. Their daily use of the crusher did not allow them to foresee Chairez's use of it. It is unreasonable to expect NCR, building the crusher twenty-two years prior to the accident, to do so now.

### Hamilton's *Delgado* Liability

**{55}** An employer's modifications to machinery or operational practices can be accomplished with sufficient wilfulness or recklessness so as to trigger employer tort liability outside the Workers' Compensation Act. *See, e.g., Mull v. Zeta Consumer Prod.*, 823 A.2d 782, 786, 787 (N.J. 2003) (Zizzali, J., concurring) (noting that alterations to machinery that substantially increase certainty of injury may allow for imposing tort liability; arguing that such modifications may create rebuttable presumptions that risk was known, or support per se intentional tort). We do not know who modified the crusher, and there is no need here to address whether using an obviously dangerous machine would trigger liability under *Delgado*. Despite the removal of the barrier blocking off the flywheels, because Chairez's actions in the face of known procedures and dangers constituted the greatest proximate cause of his injuries, I agree with the majority that the case here against Hamilton does not rise to New Mexico's *Delgado* standard as a matter of law. Hamilton's liability thus goes no further than its exposure under the Worker's Compensation Act, and the summary judgment granted to Hamilton is properly affirmed here.

**{56}** The majority's explosion of a reasonable view of foreseeability into cosmic ether removes the requirement that we apply an objective standard to judge whether foreseeing both particular modifications to a product and its subsequent use. By doing so, the majority unfortunately eliminates this Court's previous holding in *Van de Valde* which, if properly applied here, would produce the opposite result.

**{57}** Viewing the district court's grant of summary judgment as a valid statement that foreseeability is not a reasonable, disputable material fact in this case, I respectfully dissent from that portion of the opinion reversing the order of summary judgment in favor of NCR.

                                                         ————————————————————
                                                       **RODERICK T. KENNEDY, Judge**

**Topic Index for *Chairez v. James Hamilton Construction Co.*, 27,581/28,201**

| | |
|---|---|
| **CP** | **CIVIL PROCEDURE** |
| CP-SJ | Summary Judgment |
| | |
| **NG** | **NEGLIGENCE** |
| NG-FR | Foreseeability |
| NG-NG | Negligence, General |
| NG-PI | Personal Injury |
| | |
| **TR** | **TORTS** |
| TR-FS | Foreseeability |
| TR-PR | Products Liability |
| TR-SR | Strict Liability |
| | |
| **WC** | **WORKER COMPENSATION** |
| WC-II | Intentional Injury |
| WC-SD | Safety Device |
| WC-TT | Third Party Tort-Feasor |